# LEWIS N. HOPKINS, CITY COLLECTOR, *vs.* MARY B. VAN WYCK ET AL., EXECUTORS, &c.

*Taxation—Escaped Property—Time of Assessment.*

If assessable property has been omitted from the assessment books, or has escaped assessment when it ought to have been assessed, the fact that it has not been discovered and valued and placed upon the assessment books until after the levy has been made, cannot release its owner from paying taxes on account thereof, and cannot defeat the right of the State or the municipality to collect those taxes.

Baltimore City Code, Art. 50, sec. 5, provides that "the valuation of the property as it shall appear upon the assessors' books on the first Monday in March, shall be final and conclusive, and constitute the basis upon which the taxes for the ensuing year shall be assessed and levied." Defendants' testatrix died in March, 1892, having owned on the last day of February, 1892, certain personal property not on the assessment books on the first Monday of March. This property was subsequently discovered and placed on the books in May, 1892, two days after the levy for that year had been made. *Held*, that such property was liable to taxation for the year 1892.

Appeal from a *pro forma* judgment of the Baltimore City Court.

The cause was argued before ROBINSON, C. J., BRYAN, MCSHERRY, FOWLER and BOYD, JJ.

*Thomas G. Hayes, City Counsellor,* and *Wm. S. Bryan, Jr., City Solicitor,* for the appellant.

The amount claimed by the appellant is $647.34, with interest, and, although small, yet the principle involved in the decision of the question in this appeal is of the greatest importance to the public authorities of the State and of the city of Baltimore, as well as of interest and importance in determining whether the 15th Article of the Declaration of Rights can and may be enforced.

Mrs. Harriet E. Van Wyck died on the 9th of March,

1892. After her death and from the disclosures of her inventory filed in the Orphans' Court, and not until then, it was discovered that on the last of February, 1892, she owned the stocks and bonds in question. These stocks and bonds were not, in compliance with the existing law, reported by Mrs. Van Wyck prior to 1st Monday in March, 1892, (March 7th), as was her duty, and hence were not on the assessment books of the tax department of Baltimore, on said date.

The property in question having been owned in February, 1892, by the appellees' testator, should have been reported and included under the provisions of Article 50, Section 5, of City Code, in the basis of taxation as it appeared in the reports made by the Appeal Tax Court to the City and State Comptrollers, on the 1st Monday in March, 1892. But the sole reason why these stocks, etc., were not on said tax books was because Mrs. Van Wyck had failed to perform her duty and comply with the law, and report the property she owned, prior to the 1st Monday in March, 1892, to the Appeal Tax Court. The Appeal Tax Court discovered, from the inventory of Mrs. Van Wyck's personal property, on the 12th May, 1892, that solely by her act this property had escaped being included in the basis as reported on 1st Monday of March, 1892, and at once, May 12th, 1892, and for the first time this property was placed on the assessment books by the Appeal Tax Court and taxed for 1892, after notice had been given Mrs. Van Wyck's executors, the appellees. The appellees resist the payment of the taxes in question on the theory that, as the first Monday in March is the day as of which property for the current year is assessed in Baltimore City (City Code, 1892, Art. 50, sec. 5), no property which is not listed on the assessment books of the city on that day can be compelled to pay taxes for the current year.

It is conceded by the appellant that the first Monday in March in each year is the day fixed, *as to ownership*, which fixes the liability for taxes of the property for the current ·

year. That is to say, it is conceded, if property of this class is owned *prior* to the first Monday in March, it is taxed for that year, but if owned *after* said date, it is not taxed for that year.

The contention of the appellant in the case at bar is that, inasmuch as Mrs. Van Wyck owned the property in question in February, 1892, it was taxable for 1892 ; that no owner of property who may succeed in eluding the vigilance of the tax officials until after the first Monday in March can escape taxes for the current year on property owned prior to that date ; that when such property is discovered, if at any time before limitation has actually barred the claim, then such property can be valued and assessed for the back taxes, and the owner compelled to do tardy justice, which his or her own unlawful concealment has alone prevented being sooner done, by the payment of these taxes which he or she has unlawfully attempted to escape.

If this is not the law, it is a hollow form to speak of taxes as an apportionment of the public burdens, or to declare in the organic law that " every person in this State, or person holding property therein, ought to contribute his proportion of public taxes for the support of government, according to his actual worth in real or personal property."

If the contention of the appellees is correct, what becomes of the doctrine of this organic law, when it declares taxes shall be uniform and equally apportioned. This the appellees, according to their theory, would brush aside, and in lieu thereof substitute the doctrine that the payment of taxes depend on one's ability to elude the discovery by a fixed day by the tax officers, of the hidden wealth of those whose disturbed consciences, for their wrongful conduct, are lulled into repose by the fact that it is only the city and State that is deprived (if not robbed) of its own, and that others will bear the burdens and pay the city and State that which they have thus unlawfully escaped.

1st. The Legislature has itself the power, or it may delegate the power to a municipal corporation, for municipal

purposes, to regulate the mode and manner of assessment
and collection of back or escaped taxes.    If by reason of
defective machinery taxes have not been collected the Leg-
islature may remedy the defect by retrospective legislation.
1 *Blackwell on Tax Titles,* sec. 324 ; *Burroughs on Taxation,*
sec. 93 ; *Cooley on Taxation,* 356 ; *Maguire* v. *Board of
Revenue, etc.,* 71 Alabama, 422 ; *Scribner* v. *Assessors,* 37
La. An. 913 ; *Stope* v. *La. Savings Bk.,* 32 La. An. 1137 ;
*Noyes* v. *Hall,* 137 Mass. 266 ; *Harwood* v. *N. Brookfield,*
130 Mass. 561 ; *Overing* v. *Foote,* 43 N. Y. 294 ; *Shore* v.
*Manitowoc,* 57 Wis. 5.

2nd.  The laws of Maryland and ordinances of the Mayor
and City Council of Baltimore make ample provisions for
the assessing and collecting of back or escaped taxes, as was
done in the case at bar.    Under these laws and ordinances
the intention is plain that escaped property should be put
upon the books when and as discovered.    Code, Art. 81,
secs. 10, 13 ; Public Local Laws, Art. 4, secs. 827, 828 ;
City Code (1892) Art. 50, sec. 13 ;  Ordinances Nos. 80,
83–93, approved May 10, 1892.    Revenue statutes are
not to be regarded as penal, and therefore to be construed
strictly.    They are remedial in their character, and to be
construed liberally to carry out the purposes of their enact-
ment.    *U. S.* v. *Hodson,* 10 Wall. 395.

3rd.  The provision in Art. 50, sec. 5, of City Code (1892)
in these words : " And the valuation of the property as it
shall appear upon the assessors' books on the first Monday
in March shall be final and conclusive, and constitute the
basis upon which the taxes for the ensuing year shall be as-
sessed and levied," in no wise impairs the correctness of the
appellant's contention that the stocks and bonds in question
are subject to the payment of taxes for 1892.

This section provides for a *"valuation"* which is made
*" final and conclusive."*    That is, the ascertained value of the
property then listed by the tax official, as to the owner as
as well as to the city, is "final and conclusive."    This can't
be changed.    This only applies to such property as has

been on that date listed or reported. It can't be made to apply to property then liable to valuation and taxation that is owned *prior* to that date, and which its owner has concealed.

The purpose especially of making that basis is to give it to the State Comptroller as a basis for levy of State taxes, as well as furnish the Mayor and chief finance officer of city of an amount which will enable them or the City Council to fix the *rate*. The levy, as heretofore seen, is on *all* the assessable property in the city. This section can't mean that this basis is to be the *exclusive* basis, and nothing else shall be added. If so, what is the meaning of Section 21 of same Article and Code, which provides for the placing in the basis all new improvements finished on or before the first day of April?

Taxes may be levied upon property which has been listed by the assessor after the time prescribed by law. *Anderson* v. *City of Mayfield,* 19 S. W. Rep. 599 (Ky.); *Wills* v. *Bierbank,* 17 N. H. 406.

If the failure by the assessor to list and assess the property by the time prescribed by law, does not vitiate the tax, how much greater is the reason that that property should be taxed when the failure to list and assess by the time prescribed is attributable, not to the assessor, but to the unlawful concealment of the property by its owner to elude the payment of taxes? See *Am. Coal Co.* v. *Co. Com. Allegany Co.* 59 *Md.* 195.

*Skipwith Wilmer* and *James M. Ambler* (with whom was *Randolph Barton* on the brief), for the appellees.

As the whole question in this case depends upon the proper construction of the statute law of Maryland, little light is to be gained from a discussion of the laws that prevail in other States or from the decisions of Courts in other jurisdictions. Attention need only be called to the fundamental principle, laid down in every treatise upon the subject of taxation, that the assessment must always precede

the levy.   If taxes are to be equal and uniform, before it
can be determined what rate will yield a required amount
of revenue, it is necessary, of course, to know the amount
of property on which the tax may be levied.   *Cooley on
Taxation* (2nd ed.) 351 *et seq.;* 1 *Desty on Taxation,* sec. 93.
*Welty on Assessment,* sec. 7.

The tax laws applying to the whole State are codified in
Art. 81, secs. 1–42 of the Public General Laws ; the Acts
of the Legislature relating specially to the city of Baltimore,
in Art. 4, secs. 827–856 of the Public Local Laws ; and the
municipal ordinances in the Baltimore City Code, Art. 50,
secs. 1–73.

Assuming that the annual assessment or revision of the
assessment books must be completed on a certain day, or
as of a certain day, it is of course necessary that this day
should be early enough to have the taxable basis ascer-
tained, the lists made up and the tax levied in time for the
collector to complete the work of his department within the
year.   Accordingly, all the provisions, both of the statutes
and of the ordinances, point to an early day in March as
the time when the tax lists are to be completed.   The
books as they then stand are finally and forever closed, and
are the authoritative record of the amount of property on
which each citizen is liable to taxation for the ensuing year.
They furnish the only basis on which the City Council can
estimate the city's revenue for the year.   They constitute
the basis of all the accounting between the State and city
and the collector, and are the only means by which the
comptrollers can keep a check on the collector's accounts.

The final and conclusive character of this record is illus-
trated by the number of cases in which trifling irregularities
have enabled persons to escape the payment of taxes alto-
gether.   *Welty on Assessments,* section 7 ; *Cooley on Taxa-
tion,* 2d ed., pages 408 and 411.   Inaccurate description of
property and even the omission of the dollar mark have
been held to have this effect. *Hamel* v. *Smith,* 15 Ohio, 134 ;
*Richardson* v. *State,* 5 Blackf. 51 ; *Bingham* v. *Smith,* 64 Me.

451 ; *Hayden* v. *Foster*, 13 Pick. 492 ; *Woods* v. *Freeman*, 1 Wall. 398 ; *Lawrence* v. *Fast*, 20 Ill. 340 ; *Tilton* v. *Oregon C. R. R. Co.*, 3 Sawyer, 22.

None of these cases could have arisen if the tax officers were authorized to make corrections on the assessment books. Nor can it work hardship on any individual to hold him bound by what the record discloses on the first Monday of March. If any man is then charged with property which he does not actually own, he has no right to complain. *County Commissioners* v. *Clagett*, 31 Md. 210. He knows, of course, what is the amount of his liability, as shown by the tax books, at any given time (*Bonaparte* v. *State*, 63 Md. 471); and if there is any error he can have it corrected by an appeal to the Appeal Tax Court before the books are closed. No additional charge can be made against him without full notice and opportunity to make objection.

The only provisions that could possibly be supposed to authorize any alterations in the assessment books as they stand on the first Monday in March, are to be found in sections 11, 12, 13 and 21, of Article 50, of the Baltimore City Code. Now assuming, what is by no means clear, that the assessment books referred to in section 11 may be books of prior years, it is to be observed that the alterations permitted are of a very limited and well-defined character. The expression of these, of course, excludes the possibility of any others. Nowhere is there the least suggestion of the power to *add* any property, except only in the case of persons applying for transfer or abatement; and even in that case the addition is manifestly to be subject only to future taxes. This is shown by the requirement that for a transfer all taxes, including those for the year in which the transfer is made, must first be paid. A more natural construction to give to this section, as well as to sections 12 and 13, which refer to the property of persons moving into the city and to property omitted in the regular course of valuation, is that these provisions are intended to negative the idea that the power to make such corrections, given in section

6 of the same article, ceases after the first Monday in December.

McSherry, J., delivered the opinion of the Court.

The question presented by this appeal arises on the following facts : Harriet E. Van Wyck, a resident of Baltimore City, died on March ninth, 1892, possessed of a considerable personal estate that had never been entered on the assessment books, but which was liable to be assessed for State and municipal taxation. On May the fourth her executors returned to the Orphans' Court an inventory of this property, and shortly thereafter the Register of Wills, in obedience to Sec. 9, of Art. 81, of the Code, furnished to the Appeal Tax Court a copy of the inventory. Thereupon the Appeal Tax Court notified the decedent's executors that this property would be placed on the assessment books for the year 1892, and on May the twelfth, just two days after the levy for 1892 had been made by the Mayor and City Council, the Appeal Tax Court entered this omitted property on the assessment books. The appellant, who is the collector of State and City taxes for 1892, made demand upon the appellees for the taxes due with respect to this property for the year 1892, but they declined to pay them upon the ground that their testatrix had not been charged with this property on the assessment books on the first Monday of March, 1892, but had been charged therewith two days after the actual levy of the tax for that year. A *pro forma* judgment was entered against the collector by the Baltimore City Court and from that judgment this appeal has been taken.

It is the declared policy of the organic law as embodied in the fifteenth article of the Declaration of Rights, that every person shall contribute to the support of the government according to his actual worth in real or personal property. As a means for ascertaining each individual's appropriate proportion, or his just contribution, general assessment laws have been passed at irregular periods ; and, with the same

view, by other enactments, large powers have been conferred
upon the Appeal Tax Court of Baltimore City and the County
Commissioners of the several counties authorizing them, in
the intervals between general assessments, to make valua-
tions of omitted, newly discovered and recently acquired
property; to provide for transfers. where property has
changed ownership; and to allow abatements and to fix revalu-
ations in specified instances.    In the system thus devised to
put into effective operation the fundamental law, it is ob-
vious that, to avoid confusion and uncertainty, some defin-
ite period had to be adopted as the point of time, in each
year, when the valuation or appraisement fixed upon the
property actually assessed and charged upon the books to
each individual, would no longer be open to question, but
would be conclusively ascertained and made binding upon
both the city and the taxpayer alike.    Accordingly the Mayor
and City Council, by Sec. 5 of Art. 50 of the City Code of
1892, provided that "the valuation of the property as it
shall appear upon the assesor's books on the first Monday
in March, shall be final and conclusive and constitute the
basis upon which the taxes for the ensuing year shall be as-
sessed and levied."    But it was never designed by this pro-
vision to exempt from taxation for a current year the indi-
vidual who, by adroitness or otherwise, succeeded in elud-
ing the vigilance of the assessors, or who, by inadvertence,
was not rated with all his assessable property on the first
Monday in March of that particular year.    Nor was this
provision intended to put a limit or restriction on the power
of the municipality to make an assessment of omitted or
escaped property after the date indicated.    If such had
been its purpose it would have been repugnant to the policy
and spirit of the organic law itself; because it would then
have created an exemption of all property not actually as-
sessed by a designated day, though the property so ex-
empted was by law liable to assessment.    Its only object is
to fix for a current year a final and conclusive valuation
upon such property of each taxpayer as is, on the first

Monday in March, actually entered upon the assessment books; and not to exempt property that is not, but ought rightfully to be there. It has relation to ascertained values and not to an exclusive basis. This is rendered entirely free from doubt by reference to Sec. 21 of Art. 50 of the City Code. By that section all new improvements finished to the extent named in the section, on or before the first of April, are directed to be assessed and included in the basis for the then current year—a procedure utterly inconsistent with the assumption that the books as made up on the first Monday in March are final and conclusive, not merely as to values, but as to what property can lawfully be assessed at all for that year.

It is not, however, upon the property actually listed or assessed that taxes of this sort are levied. They are levied against the individual, and not upon his property at all. The extent of his liability is measured by the amount of his *assessable*, and not by the amount of his *assessed* property; and if his assessable property is not actually assessed he is not thereby relieved or exempted. So far, then, as concerns his obligation to contribute his just share of such taxes, it is wholly immaterial whether his property has been assessed or not, for the obligation is dependent not upon the circumstance or accident of assessing, but upon the fact of his ownership. When, therefore, for the convenient and methodical ascertainment of values a definite day has been prescribed by statute or by ordinance as the time when the valuation of things actually valued shall be final, the power to value and to add to the assessment books other and different things is necessarily not abridged or interfered with. This seems to us to be essentially so as a plain result from the language and intent of the organic law. But without resting solely on this deduction there are acts of Assembly and ordinances of the city which directly warrant the claim that the State and the municipality assert through the collector.

Sec. 10 of Art. 81 of the Code of Public General Laws

requires the County Commissioners and Appeal Tax Court, in all cases where discoveries of assessable property are made in the modes there pointed out, " or in any other way," to assess and add the same to " the amount on which taxes shall be levied ;" and Sec. 13 authorizes them to deal in like manner with property that may have been omitted. Sec. 13 of Art. 50 of the City Code is an ordinance passed under the broad powers conferred by Sec. 827 of Art. 4 of the Code of Public Local Laws, and provides that the Appeal Tax Court shall inform itself in reference to all property " which may have escaped, or which may have been omitted in the regular course of valuation," and directs that it shall be valued.   Now, the property in question, though owned by the appellees' testatrix on the first Monday in March, 1892, was not upon the assessment books on that day.   It had at that time obviously escaped or had been omitted in the regular course of valuation.   But escaped or been omitted from what ?   Not from the books for 1893, because that year had not arrived ; but from the books for the year during which it had been owned by the testatrix, and during which it ought to have been assessed—that is, for the year 1892.   If its omission from the books on the first Monday in March, 1892, precluded the Appeal Tax Court from including it when discovered afterwards in the list of assessable property with which the testatrix was properly chargeable for that year, then, as we have already observed, the policy of the law that requires every one to contribute according to his actual worth in real and personal property would be defeated for a particular year by a concealment of assessable property until after the first Monday in March, no matter how long theretofore the individual might have owned the property.   To such a contention we cannot assent.   If the property was omitted from the valuation for 1892, as it undoubtedly was, because, though owned by the testatrix prior to the first Monday in March, it was not included in the list of that year, then, when discovered it should have been placed on the lists from which it had

been omitted. If valued and placed upon the list, whether before or after the actual levy of the tax is immaterial, it should form part of the property by which the amount of its owner's taxes for that year ought to be measured and ascertained. The levy of 1892 was made not, upon the assessed property within the city, but was a prescribed rate as to every hundred dollars worth of each individual's assessable property. And this, as we have said, included as well that which he owned but was not assessed with, if it was not exempted by law, as that with which he was actually assessed.

If assessable property has been omitted from the assessment books or has escaped assessment when it ought to have been assessed, the fact that it has not been discovered and valued and placed upon the assessment books until after the levy has been made, cannot release its owner from paying taxes on account thereof, and cannot defeat the right of the State or the municipality to demand and collect those taxes. In the case of the *American Coal Co.* v. *Co. Com. Al. Co.*, 59 Md. 185, it appeared that the coal company was assessed upon its real estate, and that taxes were levied against it by the County Commissioners prior to the first day of July, 1880, and within the time fixed by Sec. 6, of Art. 25, of the Code, for the levying of taxes ; that the State Tax Commissioner valued the shares of stock of the company, from which valuation the company took an appeal to the Comptroller and Treasurer of the State, and that this appeal was not disposed of until July 22nd ; that upon the next day the Tax Commissioner forwarded to the County Commissioners a certificate of the assessment of these shares of stock, and that within a few days thereafter the County Commissioners made a levy of taxes on this assessed value of the stock. It was objected, that as the levy on those shares had not been made prior to the first day of July, 1880, but was in fact made more than three weeks thereafter, it was illegal and void ; but this Court upheld the levy. In dealing with the provision which directs the levy to be made

# HOPKINS *vs.* VAN WYCK. 19

Md]                    Opinion of the Court.

prior to the first day of July, the opinion reads: "This is codified from the Act of 1853, ch. 239; but it will be observed that it does not say that the levy of the taxes shall in all respects be completed before the day named. The construction of the statute should be reasonable and liberal, in order to support the action of the commissioners, rather than strict and severe, by which the action of the commissioners would be defeated." Then, going to the question of delay in making the levy, the opinion proceeds: "Under such circumstances," the ones we have already stated, "showing no fault or neglect on the part of the County Commissioners, we discover no sufficient ground for saying that the tax in question was illegally assessed or levied. It would neither be just, nor sustained by rules of fair construction, to hold that the county should lose the benefit of the assessment of the stock because of the delay in deciding the appeal or from delays in no manner attributable to the fault of the County Commissioners. We therefore hold that this objection to the levy cannot be supported."

If any effect is to be given to the statutes and ordinances providing for the assessment of escaped or omitted property, we are at a loss to see how it can be done other than by the mode pursued in this instance.

We think there was error in granting the defendants' prayer and in rejecting the plaintiff's, and as a consequence the *pro forma* judgment must be reversed and the case must be remanded, to the end that a judgment may be entered for the appellant for the amount claimed.

> *Judgment reversed with costs above and below and case remanded that judgment may be entered for the appellant.*