# THE WILLIAM SKINNER & SONS SHIP BUILDING AND DRY DOCK CO. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

*Taxation—Property Omitted From the Assessment Books at Time of Levy—Improvements on Land Made After Previous Assessment—Building Nearly Completed at Time of Levy—Time of Assessment of Property Owned by a Corporation.*

Property liable to taxation but which was omitted from the assessment books at the time fixed by law for making the tax levy may be subsequently assessed for taxation under sec. 171 of the Baltimore City charter.

Improvements upon land made since the last assessment may properly be assessed for taxation after the time fixed for making the levy, since such structures are to be regarded as taxable property omitted from the assessment books and they are made assessable separately from the land under Code, Art. 81.

A dry dock in Baltimore City was practically finished prior to October 1st, 1901, with the exception of some dredging and the gate which had been paid for and was put in position in November.   The dock had been in course of construction for more than two years and the cost of it had been nearly all paid prior to October.   On January 6th, 1902, the Appeal Tax Court assessed the dock for taxation for the year 1902.   Prior thereto the land on which the dock was constructed had been assessed and the taxes thereon were afterwards paid by the dock company.   Section 171 of the Baltimore City charter provides that the valuation of the property subject to taxation in said city as it shall appear upon the assessment books on the first day of October in each and every year shall be final and conclusive and constitute the basis upon which taxes for the next ensuing fiscal year shall be assessed and levied ; provided that this provision shall not apply to property liable to taxation and which may have escaped or which may have been omitted in the regular course of valuation, but such property shall be valued and assessed and the owners thereof charged with all back and current taxes due thereon, whenever the same may be discovered and placed upon the . assessment books.   *Held*, that the dock was so nearly completed on October 1st, that it was then liable to taxation, and the assessment of it in January was valid, since it was taxable property omitted from the assessment in October.

Under Code, Art. 81, sec. 141, etc., every corporation is required to furnish annually in March, a statement of its real property to the Appeal Tax Court or County Commissioners, as of January 1st, and the State

Tax Commissioner in assessing the shares of stock of the corporation deducts the assessed value of the real estate from the aggregate value of the shares, but it is provided that in no case shall the stock of a corporation be valued at less than the value of its real estate.  The taxes on the real estate are payable to the municipalities where it is situated. *Held*, that improvements upon the real estate of a corporation in Baltimore City completed prior to January 1st, are liable to taxation for the ensuing year, although not assessed to the corporation on October 1st, in the preceding year, that being the date fixed by law for the assessment to individuals of property for taxation in said city.

Appeal from Baltimore City Court.  (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Carroll T. Bond* and *George Weems Williams*, for the appellant.

We submit the following propositions:

1. That October 1st is the day before which property has to be taxable in order to be assessed for the following year, and that no property becoming taxable after that date is subject to taxation for the year immediately following.

2. That the structure as it existed on October 1st, 1901, on the appellant's ground, and which afterwards, when complete, became a dry dock, was not taxable.

(*a*) Because unfinished structures like it are untaxable, not being improvements, but being property in a transition state and incapable of fair assessment.

(*b*) Because the law never contemplated the taxation of unfinished structures, as shown by a contemporaneous construction of the law extending over a period of more than forty years, and as evidenced by the statute and ordinance directing the Appeal Tax Court to assess unfinished buildings under certain circumstances; and further, by the section of the law requiring assessors to assess buildings and improvements "*created*" since the previous assessment.

3. That the valuation of the property, as it appeared upon the assessment books of the Appeal Tax Court on October 1st, 1901, is final and conclusive.

4. That the structure was not omitted or escaped property within the meaning of the law, and the city, with knowledge of all the facts, having assessed the lot upon which it was being erected and of which it was a part, and collected taxes thereon, cannot in January re-assess the property and collect more taxes.

*Charles W. Field* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellees.

Sections 169 and 171 of the charter clearly show that if any property which existed on October 1st, 1901, and so subject to taxation, had escaped taxation, or been omitted from the tax roll, that it was the duty of the Appeal Tax Court to find out and list it for taxation whenever found thereafter, and to charge it with all back and current taxes. This they did ; and so the Court below found. We submit that the meaning and intent of the law is too clear for argument ; that if the property was in existence on October the first, and simply escaped taxation, because it was not known to or had not been discovered by the taxing authorities, that it was their duty at any time thereafter to list it for taxation. So much for the first ground.

In answer to the contention that the dry dock was not subject to assessment on October 1st, 1901, because it was not then fully completed, we need only say, that the laws of the State of Maryland and especially Art. 81, secs. 1, 2 and 4, being the Act of 1896, ch. 120, provide that all property, real and personal, of every description in this city, shall be subect to assessment and taxation with the exception of the exemptions mentioned in sec. 4. It will not be contended by the appellant that they come within any exemption mentioned in sec. 4. If that be so, then a dry dock, completed or uncompleted is certainly property ; it represents value ; in this case, very large value ; value of almost three hundred thousand dollars ($300,000), and there is no reason on earth, and no authority in this State or elsewhere that exempts property of that kind, from taxation, simply because the structure is not fully completed. One might as well say, that if a house were

built, costing one hundred thousand dollars ($100,000) and were entirely completed with the exception of the doors and window sash, to cost probably five thousand dollars ($5,000), that that house would not be assessable, simply because it was not thoroughly completed and ready for human habitation. Such a principle of law has never been sactioned by this Court and we respectfully submit that it has no foundation to support it.    Property is property, whether completed or uncompleted, and the only effect that the partial uncompletion can have is to reduce the value of the article.

BOYD, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court dismissing a petition filed by the appellant which sought to have assessment of its dry dock, at the sum of two hundred thousand dollars, stricken from the tax books of Baltimore City.    The assessment was made on the 6th day of January, 1902, by the Appeal Tax Court, after a hearing which was had on the 23rd of December.    The dry dock was commenced in 1899 and was not completed until the fall of 1901. It was built inside of a coffer-dam, an excavation was made of the size desired, which is sheathed on the two sides and the end next to the shore, and the other end is of stone and concrete and in it there is a gateway in which a gate rests.    The dock is floored with heavy beams supported by piles driven into the earth.    The gate is described by Mr. Skinner, the president of the appellant, as "a caisson and practically a little ship of itself that floats about in the river, and we bring it in and put it down into the place where the keel and stemposts are, and this gate makes a water-tight joint, and when the pumping begins the pressure from the outside keeps this little caisson gate up in its place and prevents leakage, while they pump the dock out."    The dry dock structure "consists of buildings, power house, machinery, boilers, a gate, etc." It is contended by the appellant that by virtue of a provision in the charter of Baltimore, the Appeal Tax Court is confined in assessments made by it to the first day of October, of

each year, and that as this structure was not completed on October 1st, 1901, that Court had no power to assess it for the year 1902. It is admitted that it cost three hundred thousand dollars and Mr. Skinner in reply to the question, "What are your views of its valuation of $200,000?" said "I would have returned to them at $300,000, as the costs of the improvements we put there." Its condition about that time was thus described by him : "September 18th, 1901, the water was first permitted to come into the dock. It took us possibly a week to flood the dock, and after the dock was flooded then this coffer-dam had to be drawn out, and after that was done the dredging had to be done at the entrance. September 18th we only had 10 or 12 feet of water in the entrance, and we had to get that down to 24 feet. After that the sills had to be cleaned off. The dredging was finished November 4th, and the gate put in its place November 14th, and the dock first pumped out November 14th, and the blocking for the keel of the ship to set on was finished November 22nd, and we docked the ship on November 25th." The gate was received November 12th and it cost $22,500, three-fourths of which had been paid on October 1st, but it was not considered the property of the company until placed in position and tested. The construction company which built the dock completed its work on November 23rd. It is admitted that considerably more than $200,000 had been actually paid out on October 1st, and it cannot be denied that with the exception of the gate and some dredging, the dock was practically finished on that date.

It was built on property purchased by the company, known as the Winebrenner and Houghton lots, which were still assessed in the names of those parties—the former at $9,467 for the lot, and $3,000 for improvements, and the latter at $20,167 for the lot, and $17,500 for the improvements. The improvements originally on those lots had been destroyed, partly by fire and the rest being torn down for the dock. The appellant paid the taxes on those assessments on January 31st, 1902, which was after this assessment was made.

As was said in *Hopkins* v. *VanWyck*, 80 Md. 15, " to avoid confusion and uncertainty some definite period had to be adopted as the point of time, in each year, when the valuation or appraisement fixed upon the property actually assessed and charged upon the books to each individual, would no longer be open to question, but would be conclusively ascertained and made binding upon both the city and the taxpayer alike." That time as now fixed by the charter of Baltimore is the first day of October. Sec. 171 of Art. 4 of Public Local Laws, known as the charter of the city of Baltimore, provides that " the valuation of the property subject to taxation in the city of Baltimore, as it shall appear upon the assesment books of said Court on the first day of October, in each and every year, shall be final and conclusive, and constitute the basis upon which taxes for the next ensuing fiscal year shall be assessed and levied," but an important proviso follows that clause which we will consider later. That section further requires the Appeal Tax Court to make out and deliver to the City Collector and Board of Estimates on the first day of October, or as soon thereafter as practicable, a statement showing the valuation and assessment of all the property subject to taxation in said city, " as it shall appear upon the assessment books of said Court on said first day of October," and also that " The said statement shall be known as the taxable basis for the next ensuing fiscal year, and after the levy of taxes, it shall be designated as the tax roll for said year." Sec. 36 requires the Board of Estimates to make out, between the first day of October and the first day of November, three lists of monies to be appropriated by the City Council for the ensuing fiscal year. Sec. 40 requires that board on the first day of October, or as soon thereafter as practicable, to send with the ordinance of estimates to both branches of the City Council a report showing the taxable basis for the next year, and the amount which can reasonably be expected to be realized by taxation for that year. That section also provides that the ordinance making the annual levy of taxes shall be passed by the Mayor and City Council in the month of November in each year, and

" The taxes levied under said ordinance in the month of November, in each year, shall be the taxes to be collected for the fiscal year next ensuing after the said month of November, and may be paid to the City Collector on or after the first day of January next, ensuing said levy." Taxes on real estate and chattels real are to be deemed in arrears on the first day of July, and those on personal property on the first day of May. By sec. 42 the City Collector is required in October, immediately upon the receipt of the statement from the Appeal Tax Court, to begin the preparation of the tax bills on said basis, and after the levy has been made to complete them and have them ready for payment on the first day of the next January, or as soon thereafter as practicable.

It will be seen from the references we have thus made to the charter, and other sections we might refer to, that the first day of October is the day on which the books are expected to be ready for the levy for the ensuing year and from that date those connected with the levy and collection of taxes are required to be actively at work until their respective duties are performed. But the first clause in sec. 171 above quoted is qualified as follows: "Provided that the foregoing provision shall not apply to property in the city liable to taxation, and which may have escaped, or which may have been omitted, in the regular course of valuation, *but such property shall be valued and assessed, and the owner or owners thereof charged with all back and current taxes justly due thereon, whenever the same may be discovered and placed upon the assessment books.*"

And sec. 169 reads that "In all cases where discoveries of assessable property are made by the said Appeal Tax Court, either from the returns of clerks, registers or assessors, or in any other way, the said Court shall assess the same and add the same to the amount on which taxes are to be levied." It is undoubtedly desirable and important that as far as possible the assessable basis be known and determined by the day contemplated by the charter. But if there be property which is taxable, but is not on the assessment books on that day, it ought not to escape taxation merely because it had not been

reported by the owner, or had been overlooked by the tax officers before that date. We will consider later the question whether this dock was taxable, in the condition it was, on October 1st, but assuming for the purposes of this branch of the case that it was, we think it is clear that the Appeal Tax Court was right in assessing it.

Referring to a provision in sec. 5 of Art. 50, of the City Code of 1892, which was very similar to the first clause in sec. 171, excepting that the day there fixed was the first Monday in March, this Court said in *Hopkins* v. *Van Wyck, supra,* "But it was never designed by this provision to exempt from taxation for a current year the individual who, by adroitness or otherwise, succeeded in eluding the vigilance of the assessors, or who, by inadvertence, was not rated with all his assessable property on the first Monday of March of that particular year. *Nor was this provision intended to put a limit or restriction on the power of the municipality to make an assessment of omitted or escaped property after the date indicated."* The opinion goes on to say that if such had been its purpose it would have been repugnant to the policy and spirit of the organic law itself, and it was expressly held in that case that the fact that the property was not put on the books until after the levy was made did not relieve it from the tax, it being "omitted or escaped property." We think the learned Judge below was right in treating this as " omitted property," assuming as we have said that it was in such condition on October 1st, as made it taxable. It is true that the land on which the dock was constructed was already assessed—although it was not assessed to the appellant, but to the former owners. But this is not a case where property already assessed had merely appreciated in value, or where the Appeal Tax Court concluded after October 1st, that it was assessed too low, and then undertook to increase it for taxation during the fiscal year beginning the next January. These lots were assessed some years ago— the record says " On October 1st, 1901, and for the several years prior thereto"—certainly before the appellant procured them, as they were assessed to the former owners,

and since that assessment these improvements, amounting to a sum well up to $300,000 on October 1st, 1901, had been put on them. The dock was in the course of construction for about two years and a half, and the authorities had not during that time attempted to assess it—probably thinking, if they knew of it, that it would not be just to assess it until it was about completed. The charter shows that assessments of improvements are specially provided for. Sec. 148 requires every assessor to inform himself of all property " which may have been omitted in the assessments, and *all buildings* and *improvements* and all property created or acquired since the last asssessment," and to value and return them to the Court. Sec. 150 provides for the method to be pursued by the Court before increasing an assessment of property already assessed, or adding new property not valued and returned by the proper assessors, and concludes by saying " provided, that nothing in this section shall be construed to apply to the valuation and assessment of new improvements or new property discovered and assessed and returned to the said Court by the proper assessor." Improvements of this character, constructed since the last assessment, were required to be reported by the assessors—they were. assessable property, property that ought to be assessed, and by sec. 169 the Court was required to assess any assessable property discovered by them. This dock had not been assessed and, if it ought to have been, it was clearly " omitted " and within the proviso above mentioned. Sec. 173 of Art. 81 of the Code of Public General Laws expressly provides that in the valuation of real estate in Baltimore City the owner shall in his schedule "value separately the improvements upon each lot or parcel of ground in said city," and by sec. 178 of that Article the assessors are required to " determine and settle the value of *each item* of property returned in said schedule." So although the improvements on land are a part of the realty, the statute itself contemplates that they shall be assessed separately, as is the universal custom, so far as we are aware, throughout the State. If then a vacant lot worth $30,000 is assessed, and improvements worth $300,000

are created on it, which are not assessed, why should they not be regarded as property which has been " omitted," within the meaning of sec. 171 of the charter?   We think they clearly should be and should be assessed, if in such condition as we have assumed this dock to be, in passing on this branch of the case.

The next question then is, was it in such condition on the first day of October, 1901, as justified the Appeal Tax Court in assessing it?   As we have seen, it was practically completed with the exception of the gate and some dredging which was necessary to be done before using it.   The greater part of its cost had been expended—considerably more than the sum at which it has been assessed.   If it was not assessable at that time by reason of what was yet to be done on it, then it would be a great temptation for property owners to postpone making some small part of improvements until after October 1st.   We do not mean to intimate that this appellant was in anywise influenced by such considerations, and there is nothing to suggest it in this case, but undoubtedly such might be the result in many instances, if the theory contended for be adopted.   These taxes were for the year 1902, and for some weeks before the beginning of that year the dock was in actual use, and although that of itself would not be sufficient to justify its taxation, it shows how near it was to completion and is a circumstance to be considered in determining the question. Indeed, with the exception of the gate, the dock proper was apparently completely before the first of October, but the cofferdam had to be removed and dredging done at the entrance. We were reminded by counsel for the appellant that Mr. Skinner testified that the structure was not a dry dock on October 1st, 1901.   That was merely his opinion, but if he was technically right in his statement, it was certainly some kind of a dock, as he spoke in his testimony of letting the water into " the dock " on September 18th, and " it took us possibly a week to flood the dock and after the dock was flooded then this coffer-dam had to be drawn out."   It was a " dock " on which the company had then expended more than

a quarter of a million of dollars, and the additional expenditure of a few thousand dollars made it what Mr. Skinner called a dry dock worth $300,000 and which his company will get the benefit of during the whole fiscal year for which it is asked to pay these taxes on a basis of two-thirds of its cost. Neither the Appeal Tax Court nor Courts of law should deal with questions of taxation from such a technical standpoint, especially when it might enable the owner to escape taxation of property, on which every principle of equity demands he should pay it. The real question to be determined in a case of this kind is, " Was this structure substantially completed or so nearly so as it can fairly be said that it was on October 1st a subject for taxation?" and that in our opinion must be answered in the affirmative.

Another view suggests itself that strengthens the conclusion we have reached. The appellant is a corporation, incorporated in this State for the purpose of constructing and operating this dock, and, although the record does not show what it is, it can be assumed that a company organized for such purposes has a capital stock. Sec. 138 of Art. 81 of Code of Public General Laws requires the president or other officer of a corporation to furnish annually to the County Commissioners of each county and the Appeal Tax Court of Baltimore City a list of its stockholders residing in them, respectively, on or before *the first day of March.* By sec. 141 of that Article he is required to furnish, *"at the time of making the returns of stock-holders,"* to the County Commissioners of the counties where the company owns real estate, and to the Appeal Tax Court of Baltimore, if it owns any there, *"a true statement* of such real property situated or located in such county or city." It then provides that *such real property* shall be valued and assessed by said County Commissioners and Appeal Tax Court to the company and requires them to give duplicate certificates of such valuation and assessment to the president or other officer, who shall transmit one of them to the State Tax Commissioner, and State, county and city taxes shall be levied upon and paid by the company on such assessment in the

same manner as the same are levied upon and paid by individual owners of real property. The Tax Commissioner assesses shares of stock of corporations, and this section states how he shall ascertain their value; "He shall deduct the assessed value of such real property * * * * from the aggregate value of all shares * * * * and divide the remainder by the number of shares of the capital stock * * * * and the quotient shall be the taxable value of such respective shares." The county and city taxes on the real property are paid to the county or city where it is situated, and those on the shares of stock where the stockholders reside. Sec. 138 of that Article provides that "in no case shall the stock of any corporation, in the aggregate, be valued at less than the full value of the real estate and chattels, real and personal, held by or belonging to such corporation in the several counties and city of Baltimore, whether the shares of said stock are quoted on the market or not." Sec. 133 requires the president or other officer of the company to report to the Tax Commissioner a true and correct statement of the number of shares of the company and the par value, with such information as to their value as may be required by the Commissioner. That section originally required the report to be made by the 15th of April, but by the Act of 1902, ch. 417, the time has been changed to the 15th of March, and provides that the information furnished by the officer of the company shall be that in his possession "as of the first day of January of each year," and the Commissioner is to assess the shares as of that date. Sec. 141 requires the Tax Commissioner to certify to the County Commissioners and to the Appeal Tax Court his assessment of shares held by stockholders residing in their counties or the city of Baltimore respectively, and the taxable value, for county and municipal purposes, is valued to the owners in the counties or city where they reside, and shares held by non-residents are taxed in the county or city where the corporation is situated. Sec. 84 requires the company to pay the State taxes on shares of stock "for the previous year" on the 2nd of January, but as

sec. 88A imposes a penalty, if they are not paid by the first day of November, this Court held in *State* v. *Safe Deposit Company*, 86 Md. 583, that they were due at that time for the current year.

It will thus be seen that the president or other proper officer of the company must furnish on or before the *first day of March, a true statement of its real property* to the County Commissioners and the Appeal Tax Court "and such real property shall be valued and assessed by said County Commissioners and Appeal Tax Court respectively to the" company. The State Tax Commissioner then assesses the shares of stock and in doing so deducts the assessed value of the real property from the aggregate value of all the shares, but in no case shall he value the stock at less than the full value of the real estate and chattels, real and personal. Such being the law applicable to corporations, how could the appellant escape taxation on this dry dock for the year 1902, even if it be conceded that it was not in a condition on October 1st to be taxed? It was completed for months before the first day of March, and the president of the company could not have made "a true statement" of the company's real property in Baltimore, without so showing. It could then undoubtedly have been valued and assessed by the Appeal Tax Court, if not previously assessed, for if that were not so, a corporation could readily avoid the payment of taxes which it justly owed. Suppose this company's stock was valued in the aggregate at $300,000 and its real property in Baltimore is worth for the purposes of taxation $250,000, and the stockholders live in Baltimore County, for example, where the tax rate is lower than in the city, is it not apparent that the company would thus escape some of the taxation which it ought to pay and Baltimore City would lose taxes that it was entitled to if that real estate is only assessed at $50,000? It does not appear whether the tax department of the State formerly fixed a particular date on which the values should be ascertained, but the Act of 1902 has now wisely named a time and fixed "the first day of January next preceding," as

the date as of which the Tax Commissioner shall assess the shares of stock and that will require him to ascertain the value of the real estate as of that time, in order to make the assessment of the shares in the manner required by law. So it seems clear to us that if there was any question about this dock being on October 1st in such condition as to be taxed, if it belonged to an individual (which we cannot admit), it should have been included for the year 1902, because it was real property belonging to a resident corporation, if the company had a capital stock, which we assume it had, and was entirely completed at least as early as November 25th, 1901.

We are not called upon to pass on the right to collect taxes on the improvements which were formerly on this property, but had been destroyed. The company made no application to the Appeal Tax Court for an allowance or deduction on account of that loss, as provided for in the charter, and moreover there is nothing before us to show whether or not it received the benefit of a reduction on account of those improvements, before the Tax Commissioner, when he assessed its shares of stock.

> *Order affirmed, appellant to pay the costs above and below.*