# CHARLESTON.

### Cole *et al.* v. State of West Virginia.

Submitted December 9, 1913. Decided December 16, 1913.

1. Judgment—*Motion to Set Aside Judgment—Continuance Over Term.*

   A motion to set aside a final judgment, entertained, argued and docketed at the same term of the court, and submitted to and taken under consideration by the court, but without final action thereon at that term, will stand continued until the next term, without other order of continuance, by virtue of section 12, chapter 114, Code 1906. (p. 413).

2. Same—*Jurisdiction to Set Aside—Motions.*

   If a motion to set aside such final judgment be so made, entertained, docketed and taken under consideration by the court at the same term at which it is pronounced, and be so continued by operation of law, jurisdiction is thereby reserved to set the same aside at a subsequent term. (p. 413).

3. Same—*Correction—Nunc Pro Tunc Order—Evidence.*

   If such final judgment be in fact pronounced and directed at one term of the court, but by inadvertence or misprision of the clerk it is omitted, the court at a subsequent term on sufficient evidence may correct or supply the record thereof by a nunc pro tunc order, and if the fact of such judgment be not impeached by some bill of exception or other part of the record, such nunc pro tunc order will be accepted as conclusive evidence of the facts recited therein. (p. 414).

4.  TAXATION—*Exemption—Property Used for Religious Purposes.*

Where property used exclusively for divine worship, and by section 57, chapter 29, Code Suppl. 1909, is exempt from taxation, is by contract in writing, recorded, sold by the trustees in November, 1910, such contract in terms reserving right in the trustees to remove the church building and foundation from the lot free of charge, and without possession taken or right of possession given by the contract to the purchaser, and with covenant and agreement therein to make and deliver to the purchaser a deed for said property on the second day of January following, and which deed is in fact not made and delivered until the third day of January, 1911, the property so sold and conveyed is not by virtue of section 54, chapter 29, Code 1906, assessable to such purchaser for taxation for the year 1911, for he is not as provided by said section the ''person who by himself or his tenants has the freehold in his possession, whether in fee or for life'', so as to be ''deemed the owner for the purpose of taxation.'' (p. 416).

Error to Circuit Court, Cabell County.

Action by James O. Cole and others against the State. Judgment for the State, and plaintiffs bring error.

*Reversed and Entered.*

*W. M. Meredith,* for plaintiffs in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

MILLER, JUDGE:

On appeal by plaintiffs from an order of the Board of Review and Equalization for Cabell County, of August 2, 1911, the circuit court by judgment pronounced on October 11, 1911, found that Lot 1 in Block 115, located at the south east corner of Fifth Avenue and Ninth Street, in the City of Huntington, had been erroneously assessed to Cole and Crane, appellants, for the year 1911, at $60,000.00; that said property was exempt from taxation for that year, the title thereto, on January 1, 1911, being then in the First Congregational Church; and thereby also considered and ordered that said lot be stricken from the land books of said county, as assessed to said appellants, and that the same be and is exempt from taxation for all purposes for that year.

The present writ of error, however, goes not to that judgment, but to the subsequent judgment of the court rendered

at a subsequent term, on March 2, 1912, whereby the cause was brought on to be heard upon appellants' petition and exhibits, and upon the motion of the prosecuting attorney, on behalf of the State, to set aside said judgment of October 11, 1911, and award the State a new trial, and which motion, this order recites, the court took time to consider; and whereby, after consideration thereof, the court was of opinion that said motion should prevail, and it was thereby considered and ordered that the judgment of October 11, 1911, be and the same was set aside and appellants' petition dismissed with costs to the State, the court being of opinion that said lot, contrary to its former judgment, was not exempt from taxation, and that petitioners were not entitled to the relief prayed for.

Assuming, for the present, that the motion of the State was made and entered at the same term of the court at which the judgment of October 11, 1911, was pronounced, the first question presented is, was that motion and the action of the court thereon, sufficient to carry the case over to a subsequent term, and to reserve jurisdiction to pronounce the judgment now before us for review?

No order showing any such motion actually appeared on the record at the term at which the judgment was pronounced; but a nunc pro tunc order entered at a subsequent term, on February 3, 1912, recites that on this day came the prosecuting attorney, and also Cole and Crane, by their attorney, pursuant to notice, and that thereupon the prosecuting attorney moved the court to set aside the order of October 11, 1911, and grant the parties a new trial upon the matters set forth in said petition; and that "the court having heard argument on the said motion, ordered that the same be docketed", and that the court takes time to consider thereof. To this order is appended the following memorandum: "The Court having directed the foregoing order to be entered at the October term of this Court 1911, and the Clerk having inadvertently omitted the entry of said order, it is ordered that the same be entered now for them. To which order, and the entering of the same the plaintiff objected and excepted." In the record as certified is a notice, said to be the one referred to in the foregoing order, returnable to October 31, 1911, with a return

thereon by the sheriff, endorsed executed on Meredith, attorney for appellants, on October 30, 1911.

It will be observed that while this nunc pro tunc order does not in terms suspend the judgment of October 11, 1911, it does show that the motion to set aside that judgment was entertained and argued, both parties being present or represented by counsel, and that time was taken to consider thereof. No final action was taken at that term, and there was no special continuance of the cause. But so far as continuance is concerned, we think our statute, section 12, chapter 114, Code 1906, controls. It provides: "All causes upon the docket of any court, and all other matters ready for its decision which shall not have been determined before the end of the term, whether regular, adjourned or special, shall, without any order of continuance, stand continued until the next term."

The question recurs then, does a motion to set aside a final judgment, made and entertained at the same term, without further act or order of suspension, reserve jurisdiction in the court to set it aside at a subsequent term? That such a motion thus entertained and considered, and carried over to another term by a special order, or by operation of law, does reserve such jurisdiction is a proposition supported by nearly, if not all, the text writers and judicial decisions on the subject, including the decisions of the Supreme Court of the United States. 1 Black on Judgments, (2nd ed.) section 310; 1 Freeman on Judgments, section 96; 16 Ency. Pl. & Pract., 208; 17 Am. & Eng. Ency. Law, 815, citing in note, *Goddard* v. *Ordway,* 101 U. S. 745, *Loring* v. *Frue,* 104 U. S. 223, *Bronson* v. *Schulten, Id.* 410, *Amy* v. *Watertown,* 130 U. S. 301, and many other decisions from California, Illinois, Missouri, Nevada, Ohio, Rhode Island, Utah, Wisconsin and Wyoming. Only one decision is cited to the contrary, *Siloam Springs* v. *McPhitridge,* 53 Ark. 21. The rule as stated in the text of this work is as follows: "It is well established as a general rule that where proceedings to amend, open, or vacate a judgment or decree are commenced during the term at which it was rendered, the jurisdiction of the court over it for this purpose may be continued for a subsequent term, and the relief sought be granted at such term." We have examined

73 W. Va.

the decisions cited, and find them generally supporting the text. In 23 Cyc. 861, it is said: ''The rule against amendment after the term does not apply to interlocutory judgments or such as remain in fieri, or to action in that behalf taken with the consent of the parties concerned or at their request, or where the judgment is carried over the term by a motion to amend or correct it or a petition for a rehearing.'' Citing numerous decisions, including our case of *Green & Co.* v. *Pittsburgh, etc. R. Co.,* 11 W. Va. 685. In *Goddard* v. *Ordway, supra,* a case directly in point, Chief Justice Waite, at page 751, says: ''Whatever parties are bound to take notice of at one term they must follow to the next, if they are not, in some appropriate form, dismissed from further attendance. In this case the motion to allow a reargument went over as unfinished business, and carried the parties with it. The proceeding was in all material respects like a motion for a new trial filed in time at one term and not disposed of until the next. Under such circumstances, a judgment or decree, although entered in form, does not discharge the parties from their attendance in the cause. They must remain until all questions as to the finality of what has been done are settled. The motion, when entertained, prolongs the suit, and keeps the parties in court until it is passed upon and disposed of in the regular course of proceeding.'' In our case of *Green & Co.* v. *Railway Co., supra,* the point was not directly involved or decided, but this exception to the general rule is recognized in the sixth point of the syllabus. The numerous Illinois decisions cited are most of them directly in point. In the case of *Aspen Mining & Smelting Co.* v. *Billings,* 150 U. S. 31, 36, it was decided, that if a motion or petition for rehearing is made, or presented in season, and entertained by the court, the time limited for writ of error or appeal does not begin to run until the motion is disposed of. ''Until then'', says the court, at page 36, ''the judgment or decree does not take final effect for the purposes of the writ of error or appeal.'' Citing other Supreme Court decisions. We, therefore, affirm the first question.

The next question is, was or is the nunc pro tunc order valid, so as to supply the omission, and show a motion made, entertained, and continued at the same term that the judgment set

aside was entered? As already observed, this order, if valid, shows appearance of the parties by counsel to the motion, argument thereon, and time taken by the court for consideration. The memorandum attached to the order amounts to an affirmative statement by the court that the order referred to was in fact directed at the same term and was inadvertently omitted by the clerk. Whether this order was predicated upon any memorial preserved, or memorandum or record kept by the court or judge, or other evidence of the fact, is not shown, but there is no bill of exception or other record impeaching or contradicting the facts so certified by the court, without which we think we are bound to assume, in a legal proceeding of this character, that the facts were as the court has certified. A nunc pro tunc order is competent evidence of the facts recited therein. *Stampfle* v. *Bush,* 71 W. Va. 659, 662, citing *Cogswell* v. *State,* 65 Ind. 1. In *Vance* v. *Railway Co.,* 53 W. Va. 338, opinion by Judge Poffenbarger, an interluctory order entered nunc pro tunc was involved; here we have a final order or judgment. But, as the opinion in that case shows, the power of a court, nunc pro tunc, at a subsequent term, to make its record speak a final judgment actually pronounced and directed on satisfactory evidence thereof and of the nature and extent of the relief granted by it, is well established. At page 343, of the case just cited, Judge Poffenbarger says: "The second class of cases includes those in which formal judgment has been pronounced by the court, but not entered in the record by reason of some accident or mistake, or through the neglect, omission, or misprision of the clerk. The court which has ordered a judgment, which the clerk has failed or neglected to enter in the record, has power, even after the term at which it was rendered has passed, to order the judgment so rendered to be entered nun pro tunc, provided there be satisfactory evidence that the judgment was rendered as alleged, and of the nature and extent of the relief granted by it." In *Schoonover* v. *Railroad Co.,* 69 W. Va. 560, opinion by Judge Poffenbarger, the first point of the syllabus is: "A final judgment, rendered but not entered by reason of inadvertency of the clerk, may be entered by a nunc pro tunc order at a term of the court subsequent to the one at which it was rendered, provided the evidence of the rendition thereof

is sufficient." In *Vance* v. *Railway Co., supra,* the evidence on which the order was entered, which appeared in the record, was not sufficient to support the fact of a prior order directed. In *Schoonover* v. *Railroad Co., supra,* the nunc pro tunc order was supported by sufficient evidence. In the case at bar, as already noted, the evidence is not certified, but on authority of *Stampfle* v. *Bush,* we look to the recitals in the order itself, which is not impeached for evidence of the facts on which the order was properly predicated.

Lastly, we reach the question involving the merits of the case, was the property taxable to the appellants for the year 1911, denied by the original order, but affirmed by the judgment before us on this writ of error? We have reached the conclusion that it was not, and that the original judgment was right, and that the judgment now before us is erroneous, and should be reversed. The record shows that appellants purchased the church property by contract of November 1, 1910, whereby the Consolidated Realty Company, a previous purchaser, without deed, joining with the trustees of the church, in consideration of $55,000.00, paid in cash, except $8,300.00, represented by note, at twelve months, with interest, agreed that on Jaunary 2, 1911, they would convey with general warranty, without reservation of lien for the deferred payment, the property in question, "reserving" therein "the right, however, to said Trustees to remove the church building and foundation thereof from said lot free of charge." This contract or agreement gives the purchaser no right of possession, and there is no evidence that they then or at any time in fact took possession of the property under the contract or otherwise. This contract appears to have been admitted to record in Cabell County, on November 11, 1910. The deed called for by this contract was not in fact made and delivered to the purchasers until January 3, 1911. This deed which by reference thereto makes said contract part thereof, was the only evidence before the board of review and equalization, upon the application of appellants to correct the assessment as to them for the year 1911. As the contract of purchase did not give appellants title or possession, we do not think we can assume, in the absence of other evidence, actual possession or right of possession taken, except from the date of the deed,

which was January 3, 1911, three days after the date with
reference to which, as the law then was, the taxes for 1911
related.   In argument it was insisted that right of immediate
possession was not acquired by the deed, and was not in fact
taken, because of the reservation in the contract, made part
of the deed, giving right to the church trustees to remove the
church building and foundation from the lot.   It was also
argued, as if the fact appeared in the record, that after the
contract and after the deed, and at the time of the proceedings
begun before the board of review and equalization, the trustees
of the church were still in possession, occupying and using
the property, perhaps for church purposes; but there is no
evidence of these facts in the record.   Are we not bound to
assume, however, on the evidence of the contract and deed
that neither possession nor right of possession were acquired
under the terms of the contract until the deed was made and
delivered?   We think this presumption exists.   The only
authority cited or relied upon by the Attorney General to
sustain the judgment below, is our case of *Copp* v. *State,* 69
W. Va. 439.   But the exact question we have here was not
involved or decided in that case.   The exact point decided
there was that property once owned and used by the United
States government, for governmental purposes, the legal title
to which is retained to secure future payments of the purchase
money, is not liable to taxation by the State, so long as the lien
remains unsatisfied.   The question was mooted, but not decid-
ed, whether under our statute land may at any time be taxed
in the name of the equitable owner.

We are of opinion that our statutes control our decision in
the case before us.   In the Copp Case the purchasers were
and had been in possession of the property taxed, and enjoy-
ing the rents and profits thereof.   Such are not the facts in
this case.   Our statute, section 54, chapter 29, Code 1906, pro-
vides that: ''As to real property the person who by himself
or his tenants has the freehold in his possession, whether in
fee or for life, shall be deemed the owner for the purpose of
taxation.''   Of course one who has possession by his tenant
would fall within the meaning of this statute, for the tenant's
possession would be his possession; but this would pre-sup-
pose title and right to possession, not given we think by the

contract of purchase involved in this case. As was argued at the bar the purchasers here could not have sued for or recovered possession of the church property until after deed made. How then could it be properly said that appellants had the freehold in possession on January 1, 1911? But we have other statutes throwing light on the subject. Section 31, chapter 29, for example, requires the clerk of the county court, annually, to make out a certified list, and deliver the same to the assessor, showing all transfers of title to land, and whether by will, deed, judgment or decree, the names of the devisors and devisees, and grantors and grantees, and the parties in favor of and against whom judgment or decrees have been entered; the nature of the estate transferred; the character of interest in the land conveyed, &c. Not a thing is said about any contract to convey. "From the list thus furnished", this section further provides, "the assessor shall make the necessary changes in the land books for the current year, and shall value each tract of land or interest therein, so transferred at its true and actual value." Sections 28, 29, and 30 also relate to the same general subject, and provide for certain lists to be made out by public officers and delivered to the assessor. And then section 37, of the same chapter, says: "The lands specified in the lists, copies, deeds, records, abstracts and statements, mentioned in the twenty-seventh, twenty-eighth, thirtieth, thirty-first, and thirty-third sections of this chapter, shall be transferred by the officer whose duty it is to make out the land book to the persons who appear thereby to be the owners thereof." None of the sections referred to require the officers mentioned to include in such lists contracts for the sale and conveyance of land.

Most, if not all, states have statutes like ours fixing a date with reference to which the status or ownership of the title shall control for the purpose of taxation. "There are some inconveniences and inequalities resulting from this", says 1 Cooley on Taxation, (3rd ed.) page 605, "but some regulation of the kind is indispensable. A force of tax officers cannot be kept employed for the year in watching the transfers of property, the movement of persons, and vicissitudes of business, in order to equalize the charges upon them; periodical assessments, if they produce injustice in one case, may correct it in

the next, and on the whole are likely to be fair. At any rate, they constitute the best regulation the law can establish.'' The text of this writer is quoted in *Clearwater Timber Co.* v. *Nez Perce County,* 155 Fed. 633, a case holding, ''that under such statutes the status of property within the state for purposes of taxation is fixed on the second Monday in January, and that real estate exempt from taxation on the second Monday in January of any given year does not become subject to taxation during that year, even though transferred to a person in whose hands it is no longer exempt under the law.'' In *Tracy* v. *Reed,* in the United States Circuit Court for the District of Oregon, 2 L. R. A. 773, the statute of Oregon required real property to be assessed to the owner thereof. It was held, that the owner for the purpose of taxation was the person having legal title or estate thereto or therein, and not one who by contract or otherwise has a mere equity therein or a right to compel a conveyance of such legal title or estate to himself. In Maryland, construing a statute similar to ours, it was held, that where property which was exempt from taxes on the first day of October, 1901, as property used for religious worship, was conveyed to a purchaser on November 16, 1901, such property was not subject to city taxation against the purchaser for the succeeding year. *Mayor, etc. of Baltimore* v. *Jenkins,* 53 Atl. 930. Referring to a prior Maryland case, the court in the case just referred to, says: ''The purpose of these provisions, as was said in *Hopkins* v. *Van Wyck,* 80 Md. 15, 30 Atl. 556, in considering analogous provisions in the City Code of 1892, is 'to designate some definite period as the point of time in each year when the valuation or appraisement fixed upon the property actually assessed and charged upon the books to each individual would be conclusively ascertained, and made binding both upon the city and the taxpayer alike,   *   *   *   *   and to fix for a current year a final and conclusive relation upon such property of each taxpayer as is on March 1st (now October first) actually entered upon the assessment books, and not to exempt property that is not, but ought rightfully to be, there.' ''

We think the policy of our law, evidenced by the statutes referred to, is to have a fixed and definite date by reference to which all property shall be assessed for taxation, and he is

owner for the purpose of taxation who on that day, by himself or his tenant, has the freehold in possession. We do not think it can be seriously contended that appellants were owners within this provision of the statute, as of the day to which the assessment must have related for the year 1911; if not, the property was not taxable to them for that year.

We are not called upon and do not decide that the property was not taxable to some one. Section 57, chapter 29, Code Suppl. 1909, provides that, "property used exclusively for divine worship; parsonages, and the household goods and furniture pertaining thereto" shall be exempt. If the fact was that the property here involved, first sold to the Consolidated Realty Company, and afterwards sold to appellants, was not in the year 1911 used exclusively for public worship or for other purposes exempting it, it might be taxable, though the title remained in the trustees of the church, and that somebody is liable for the taxes. But that question is not before us. The only question we decide, as pertaining to this point, is, that the property was not taxable to the appellants for the year 1911.

For the reasons aforesaid we are of opinion to reverse the judgment below, and enter such judgment here as we think the circuit court should have entered, correcting the assessment and exonerating the appellants from all taxes assessed against them on said property for 1911, and certifying the same to the county clerk and sheriff of Cabell County, and to the municipal officers of the City of Huntington, and to the State Auditor.

*Reversed and Entered.*