WIRT ADAMS, STATE REVENUE AGENT, *v.* GREGORY M. LUCE.

[39 South. Rep., 418.]

TAXATION. *Back assessments. State revenue agent.*

The statute, Laws 1894, ch. 34, p. 29, authorizing the state revenue agent to back assess property which has "escaped taxation" applies only to property that has not in fact been assessed, and does not apply where the assessment roll shows that it has been assessed, even though such assessment be void.

FROM the circuit court of Greene county.

HON. WILLIAM T. MCDONALD, Judge.

Adams, state revenue agent, the appellant, was plaintiff, and Luce, appellee, was defendant in the court below. From a judgment in defendant's favor the plaintiff appealed to the supreme court.

In the year 1900 there was a general assessment of lands, and appellee rendered a statement of his land to the assessor, valuing the same at $3.50 per acre. This valuation was entered by the assessor on his roll. The assessor did not complete his assessment roll and file it with the clerk of the board of supervisors by the first Monday in July, as required by Code 1892, § 3782, and the board of supervisors, at its meeting on the first Monday in July, extended the time for the completion of the roll to the first

Monday in August, and at its meeting on the last-named date, finding the roll still incomplete, granted a further extension of time to August 20th. The assessment roll was filed August 18th, and at the meeting of the board on the first Monday in September the roll was accepted, and the board, in attempting to equalize the taxes, increased the valuation of the lands of appellee, without notice to him, from $3.50 to $5 per acre, and made an excessive levy of taxes. The assessment was adjudged void by the chancery court in a suit to which appellee was a party, and the decree to that effect was affirmed by the supreme court. While the litigation was pending the appellee paid taxes at a rate less than that levied by the board of supervisors, and took the tax collector's receipt for the sum paid, which amount was paid into the state and county treasuries by the tax collector. The revenue agent instituted this suit, seeking to treat all the land of the appellee so assessed as having escaped taxation, and demanded that the same be assessed for taxation at the true value —to wit, $5 per acre. The board of supervisors approved the back assessment, and on appeal to the circuit court a trial was had, resulting in a peremptory instruction in favor of the appellee, dismissing the suit.

*J. E. Alderman,* for appellant.

Counsel cites the following authorities: Code 1892, § 3782; Code 1892, § 3784; *McGuire* v. *Union Co.,* 76 Miss., 868 (s.c., 25 South. Rep., 367); *Brothers* v. *Beck,* 75 Miss., 482 (s.c., 22 South Rep., 944); Laws 1894, sec. 3, ch. 34, p. 29; Code 1892, § 3772; Constitution 1890, sec. 112; *Crawford* v. *McLaurin,* 83 Miss., 265 (s.c., 35 South. Rep., 209, 949); *Revenue Agent* v. *Clarke,* 80 Miss., 134 (s.c., 31 South. Rep., 216); *State* v. *Ader,* 68 Miss., 487 (s.c., 9 South. Rep., 645); *Richardson* v. *Toliver,* 71 Miss., 966 (s.c., 16 South. Rep., 213); *Timberlake* v. *Compress Co.,* 72 Miss., 323 (s.c., 16 South. Rep., 530); *Whitney* v. *Cook,* 53 Miss., 551; *Carson* v. *Leathers,* 57 Miss., 650; *Harris* v. *State,* 71 Miss., 462 (s.c., 14 South Rep., 266).

*Ford & White,* for appellee.

Appellant's whole case is predicated of the idea that property has "escaped taxation" under the law, when the board of supervisors, or tax collector, or other officer, has departed from the course, or method, adopted by the legislature for assessing and collecting taxes in such a sense as to invalidate a tax sale, and that whenever it is apparent that there has been an invalid exercise of the taxing powers, by the regularly constituted authorities, the law will treat all payments of taxes under such invalid proceedings as having been voluntarily made at the peril of taxpayers, and that at once the revenue agent is vested with a power and discretion to proceed against such persons as in his opinion have not contributed what he, the revenue agent, thinks a fair proportion of taxes. Such a construction of the powers of the revenue agent would be subversive of every element of uniformity and equality of taxation, and would substitute for the regular and uniform procedure provided by law for all persons and property the mere will, or perhaps caprice, of an executive officer. If the revenue agent may, for purely technical reasons, investigate into the proceedings of the fiscal agents of the counties, and whenever, in his opinion, an error or mistake has been made, which would enable the taxpayer to defeat a tax sale of his property, treat such a taxpayer as a delinquent and his property as having escaped taxation, and proceed against him under the provisions of the back-tax law, then in all reason and fairness it should also be held that he is bound to proceed against the whole county, and not against specially selected individuals and properties.

Where the fiscal agents of the counties have had an opportunity to pass upon the valuation of property for assessment, and have actually passed upon it, and a payment is made upon such valuation, such payment is final, and the only property that can be made subject-matter of an assessment by the revenue agent is property *that has not been assessed at all.* There is no conten-

tion but that every acre of the land embraced in this proceeding was actually entered upon the assessment roll of Greene county for 1900 at a valuation of $3.50 per acre; nor is there any contention but that appellee has paid taxes into the hands of the tax collector for the fiscal years 1900 and 1901 at the highest rate the law permits upon this land, upon the $3.50 per acre valuation. But because appellee, among other taxpayers feeling themselves imposed upon on account of what they considered arbitrary discrimination by this board of supervisors, appealed to the courts and successfully enjoined the increased valuation made by the board at its September, 1900, meeting, they are proceeded against by the revenue agent on the ground that this property has escaped taxation.

We insist that the test as to whether property had escaped taxation so as to become the subject of back-tax proceedings by the revenue agent is whether the property was listed for taxation on the county assessment roll and where the board of supervisors had an opportunity to assess it. *Revenue Agent* v. *Clarke,* 80 Miss., 134 (31 South. Rep., 216). It is not competent for the board of supervisors or the assessor to reassess property for back taxes because the assessed valuation was too low. *Bank* v. *Lafayette County,* 79 Miss., 152 (s.c., 29 South. Rep., 825).

The policy of employing the said revenue agent to ferret out and collect taxes upon property which has escaped taxation was a good one, and has become a part of the public policy of the state of Mississippi, and when confined to the objects and purposes for which that officer is employed is, we submit, a most just and wise law. But we do insist that it was never the purpose of the legislature to vest in any single person any such autocratic powers as are asserted in this proceeding—that is, to authorize the agent, in the exercise of what he should conceive to be a discretion, to go into a county and declare an assessment roll valid as to one person, or set of persons, and invalid as to others.

WHITFIELD, C. J., delivered the opinion of the court.

We are clearly of the opinion that this case falls without the power of the revenue agent. The words "escaped taxation," under the construction of the revenue law, should receive the meaning usually and popularly accorded to them. The evil to be remedied demonstrates this. The object of the law, in respect to the back assessment of property by the revenue agent, was to prevent property which had not been actually assessed at all from escaping its proper portion of the public burden of taxation. Property may escape taxation in varied ways, as, for example, (a) by being willfully withheld from assessment by the owner; (b) by being inadvertently or accidentally omitted by the owner in returning his property to the assessor. In either of these two cases, and in others which may be conceived, there has been in fact—there has been actually—escape of such property from taxation; it has never been assessed at all as a matter of fact. And it was the purpose of the law, in cases like these, where the regularly constituted fiscal officers had failed to assess all property liable to taxation, to authorize the revenue agent to back assess such property never heretofore in fact assessed at all, and which was, therefore, described as property which had in fact escaped taxation. But where an assessment has in fact been made, where the assessment roll shows on its face all that it ought to show—the name of the owner, the description of the property, the valuation of the property, the tax, etc.—but that assessment is irregular or imperfect or defective, or even absolutely and utterly void, by reason simply of a failure to comply with some vital and fundamental requirement of the law, such property cannot, within the meaning of these words, "escaped taxation," be said to be property which has escaped taxation in fact. In such cases, manifestly, there has been an assessment—an assessment in fact, an actual assessment. The property has not been withheld from the assessment roll. It has not been omitted by inadvertence, accident, or for any other reason. It is

there on the assessment roll. It is assessed at a certain rate. It is all assessed. But the whole roll is void because of such failure to comply with such fundamental requirement of the law. There is, in such latter case, no assessment in the eye of the law; but there has been an actual assessment in fact, though not valid in the eye of the law.

We think it far safer to hold, in view of the evil to be remedied by the statute on the subject, and in view of the canon of construction that words not technical, as these words, "escaped taxation," ought to be given their usual, ordinary, popular signification, that property can never be said to have escaped taxation, within the meaning of the revenue law on that subject, save only in those cases where there never has been any actual assessment at all of such property. The original thought in the statute authorizing the revenue agent to back assess property which has escaped taxation was to furnish machinery, not initiating assessment primarily, but to supply the defects in an assessment already made. It will not do to say that, because an assessment is utterly void in the eye of the law, though once actually made, such property has escaped taxation. The very term "escape," *ex proprio vigore,* implies that it had never been found or known or listed for taxation. That escapes detection which never has been seen in fact. That escapes assessment which never has in fact been assessed in any way. That which, as a matter of fact, has been returned by the owner, placed upon the assessment roll by the assessor, dealt with by the board of supervisors and by the tax collector, cannot be said, in any proper sense of the words "escaped taxation" or within the scope of the evil to be remedied by the revenue law, to have escaped taxation.

If it should be objected that, where an assessment is utterly void, legally, unless the revenue agent may assess, the owners will get off without paying their taxes, the answer is that that objection is one arising *ab inconvenienti.* If that be so, it does not follow that the power of the revenue agent to back assess is

to be created out of the want of power on the part of the author-
ities of the county who have so blundered as to get up that sort of
situation to get the proper taxes from its citizens.    The power
of the revenue agent to proceed must affirmatively appear in the
face of the law creating his office and enumerating his powers,
and not be negatively derived by reason of the evils of a situation
due to the blunders of a board of supervisors from the inability
of a county to get its taxes.    The evils of an opposite construc-
tion are apparent to us upon mature deliberation, and would
lead to endless confusion.

*Affirmed.*

TRULY, J., delivered the following dissenting opinion:

I dissent.    I agree with the majority of the court that the
land assessment roll of Greene county for the year 1900 and the
levy of taxes based thereon was "absolutely and utterly void."
Being void, all parties were left in the same situation as if
neither assessment nor levy had been attempted.    The property
owner was not thereby compelled to pay any taxes, because his
property had not been legally assessed—no taxes legally imposed.
Were the state and county to be deprived of all taxes simply be-
cause the board of supervisors misinterpreted the law and com-
mitted a blunder?    I do not so read the plain provisions of the
law.    In my opinion a void assessment and levy is, in the eye
of the law, no assessment and no levy.    No legal effect can be
given to an act absolutely void.    This being true, the property
"escaped taxation," and the board of supervisors, under Code
1892, § § 3768, 3769, and the revenue agent, under Acts 1894,
ch. 34, p. 29, had the power to subsequently have assessed all
property upon which the taxes had not, in point of fact, been
paid at the valuation approved by the board of supervisors.    If
this be not true, we have this anomalous condition of affairs: The
board, through error, makes a void assessment and levy.    This
imposes no burden on the taxpayer, but leaves him at liberty to
pay all, or little, or nothing, as he may choose.    He may at his

Dissenting opinion.

option pay the tax attempted to be levied at the valuation as fixed by the board, and, if he does so, is protected against further taxation, notwithstanding error in assessment or levy—*Adams* v. *Kuykendall,* 83 Miss., 599 (35 South. Rep., 830)—or he may refuse to pay and successfully resist the collection of any tax under such levy.

On the other hand, if the view of the majority be sound, the error of the board of supervisors was, as regards the state and county, beyond correction; and a void act prevents any fiscal authority from subjecting the property listed in the void assessment roll from any taxation for that year. Under this view the property owner may pay what he pleases, fix his own valuation arbitrarily, or refuse to pay anything at all, and still the fiscal authorities are powerless. In other words, the entire property of a county may escape all taxation through a blunder on the part of the assessor or board of supervisors. I cannot assent to this conclusion. In my opinion, property merely listed on a void assessment roll has escaped assessment; property which, though liable thereto, has paid no taxes, has "escaped taxation."

*Mayes & Longstreet,* for appellant, after the delivery of the foregoing opinions, filed an elaborate suggestion of error, upon which a reargument was granted and the case again argued orally by *Edward Mayes,* for appellant; and by *W. A. White,* and *J. I. Ford,* for appellee.

*The court thereafter overruled the suggestion of error.*