# GROSVENOR ET AL. *v.* SUPERVISOR OF ASSESSMENTS OF MONTGOMERY COUNTY ET AL.

[No. 166, September Term, 1973.]

*Decided March 1, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, ▮ SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*David Macdonald,* with whom were *David E. Manoogian* and *Macdonald & Manoogian* on the brief, for appellants.

*K. Donald Proctor, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee Supervisor of Assessments of Montgomery County. *H. Christopher Malone, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney,*

and *Robert G. Tobin, Deputy County Attorney,* on the brief, for appellee Montgomery County, Maryland.

ELDRIDGE. J., delivered the opinion of the Court. BARNES, J., dissents and filed a dissenting opinion at page 242 *infra.*

The appellants, owners of real estate in Montgomery County, Maryland, contest the assessment and taxation of their property in 1970 for the years 1967, 1968 and 1969 under Maryland's "Escaped Property" statute, Maryland Code (1957, 1969 Repl. Vol.), Art. 81, § 34. It is claimed that the property was not "escaped property" within the meaning of the statutory provision.

The subject property consists of a 46.9 acre tract of land, improved by two houses and a garage, which appellants have owned for over forty years. Prior to 1967, appellants each year had paid the taxes imposed on the property. On May 1, 1967, appellants leased the property to an organization calling itself "National University." The lease was for a fifteen year term, and contained the proviso that after three years either party had an absolute right to terminate upon 90 days' notice. The lease also provided that the lessee was to pay the property taxes. The name of the lessee was later changed to "Potomac University," and later changed again to "National Graduate University."

The lessee University on June 12, 1967, filed with the Supervisor of Assessments a petition for a tax exemption under what was then Art. 81, § 9(8) of the Code.[1] This section exempts from taxation real property "owned and used exclusively" by educational institutions. The petition was granted, and the property was treated as exempt for the years 1967, 1968 and 1969.

In early 1970, a question arose concerning the propriety of the tax exemption in light of the provision in the tax laws that the lessee shall not be treated as the owner of property for tax purposes unless the lease is for ninety-nine years or,

---

1. Now Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.), Art. 81, § 9(e).

if for a shorter term, is perpetually renewable.[2] The Attorney General issued an opinion that the exemption should not have been granted, and the Supervisor of Assessments, on June 3, 1970, rescinded the exemption.

Thereafter, the Supervisor of Assessments sent appellants an "Escaped Property Notice of Assessment" for each of the levy years 1967, 1968 and 1969. The Supervisor enclosed a legal memorandum to the effect that the property was subject to assessment and taxation for those years as "escaped property" under § 34 of Article 81. Appellants were told that tax bills would be rendered in the near future. Appellants thereupon formally protested the Supervisor's notices proposing to assess the property for the back years.[3]

After a hearing on appellants' protest, the assessments were finalized by the Supervisor of Assessments. Upon appellants' successive appeals, the Supervisor's decision was upheld by the Appeal Tax Court for Montgomery County and then by the Maryland Tax Court.

Appellants do not here challenge the Supervisor's decision rescinding the tax exemption. All parties to the appeal agree that the Supervisor made a mistake in 1967 when he granted the exemption, although there is some disagreement as to whether appellants or their agents in any way submitted misleading information which induced the mistake. Consequently, no issue concerning the legality of the tax exemption is before us. Moreover, we shall assume *arguendo* that the Supervisor mistakenly granted the exemption entirely on his own, without any submission of misleading information or other fault on the part of the appellants or those in privity with them. The issue, then, is whether the Supervisor who erroneously granted an exemption is authorized by statute to later subject the property to taxation for the exempt years.

---

2. Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.), Art. 81, § 8(7)(a).

3. At the same time, appellants terminated the lease to the University, whereupon the "President" of the University and his family vacated the premises. Apparently, the University had no students or faculty, and the only occupants of the premises were its president and his family. Appellants state that their demands upon the president for reimbursement of the back taxes have met with no response.

The Maryland "Escaped Property" statute, Code (1957, 1969 Repl. Vol.), Art. 81, § 34, provides:

"In case any property which by law is subject to assessment and taxation has escaped, such property shall be entered upon the assessment rolls at any time and shall be subject to taxation for current and previous years, not exceeding four years in all, in the same manner as other property is subject to taxation. The levy for each and every year by the county commissioners of the several counties and by any city shall be deemed and taken to have covered and embraced all property which was not assessed, but which ought to have been assessed, for the year for which any such levy was made." [4]

The appellants argue that to come within the above statutory provision, the property must have escaped both "assessment" and "taxation." The property here involved, they insist, did not escape assessment but was in fact "assessed." It was "assessed," appellants claim, because it was known to the Supervisor and listed in his records. Turning to the element of taxation, appellants acknowledge that the property was not taxed but claim that it did not "escape" taxation. The word "escape," in their opinion, does not encompass the deliberate, although mistaken, act of the Supervisor in granting an exemption. In sum, appellants assert that to come within § 34, property must escape both assessment and taxation and that this property escaped neither assessment nor taxation. Appellants' theory seems to be that only property which was unknown to the tax assessor, either by oversight or because the taxpayer withheld information, is encompassed by the statute.

Appellants' position, in our view, is not supported by the language of the statute or the decided cases. Moreover, their construction of the statute, if adopted, would create an

---

4. For our most recent discussion of this statute, see Supervisor of Assessments v. Bay Ridge Properties, Inc., 270 Md. 216, 310 A. 2d 773 (1973).

illogical distinction with respect to properties which should have been taxed for prior years but were not.

In arguing that their property did not escape "assessment" but was in fact assessed in 1967, 1968 and 1969, appellants rely on the facts that the property was known to the Supervisor during that time, that he carried work sheets or cards on the property during the period, that he made a decision to exempt the property, and that this decision was marked on the work sheets or cards. Appellants insist that the property was therefore on the "assessments rolls" and that the "exemption from taxation was a direct product of the assessment process."

It is true that the term "assessment" as used in tax statutes has been given a somewhat fluid and imprecise meaning. Nevertheless, as normally used, "assessment" is incident to the actual imposition of taxes. It would be a non sequitur to refer to an "assessment" giving rise to a tax exemption. As Chief Judge McSherry stated for the Court in *Consolidated Gas Co. v. Mayor and City Council of Baltimore*, 101 Md. 541, 558, 61 A. 532, 538-39 (1905):

" . . . 'An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists in the two processes of *listing* the persons, property, &c., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them.' *Cooley, Tax*, 258; *New York v. Weaver*, 100 U.S. 539; 3 *Cyc.* 1111."

We more recently set forth the same definition in *Casey Dev. Corp. v. Montgomery County*, 212 Md. 138, 146, 129 A. 2d 63, 67 (1957), adding: "The assessment and the levy are separate and distinct elements of the taxing process." 212 Md. at 146. *See also, e.g., Whitehead v. Henson*, 223 Ga. 329, 155 S.E.2d 391, 393 (1967) ("the assessment is the amount on which the taxpayer pays taxes."); *Webb v. Bidwell*, 15

Minn. 479, 483 (1870) (an assessment took place "when the amount or proportion of tax to which each parcel of real estate was subject, was fixed and determined."); *Iowa Nat. Bank v. Stewart,* 214 Iowa 1229, 232 N. W. 445, 451 (1930) ("The assessment consists in the listing of the property to be taxed and the estimation of the sums which are to constitute the basis of the apportionment of the tax . . . ."); *Northwestern Imp. Co. v. Henneford,* 184 Wash. 502, 51 P. 2d 1083, 1085 (1935) (" 'Assessment is the listing and valuation of property liable to taxation . . . .' "); *Broad & Sansom Realty Co. v. Fidelity Bldg. Corp.,* 292 Pa. 287, 291, 141 A. 34, 35 (1928) ("Assessed, as used in our taxing statute and as here used, means a certain sum of money, fixed under a given rate on property valuation, due and payable as taxes."); *People v. Priest,* 169 N. Y. 432, 435, 62 N. E. 567, 568 (1902); *Pipola v. Chicco,* 169 F. Supp. 229, 231 (S.D.N.Y. 1959). While these definitions of the word "assessment" vary somewhat, the cases all recognize that assessment is part of the process resulting in the payment of or demand for tax money.

The very section of the Maryland Code dealing with property tax exemptions, and the section under which the subject property was granted an exemption, shows that it is a distortion to refer to an assessment giving rise to a tax exemption. Section 9 of Art. 81 begins: "The following real and tangible personal property shall be *exempt from assessment* and from State, county and city ordinary taxation . . . ." (Emphasis supplied.) Thus, exemptions are from assessment and taxation. Property cannot, under Maryland law, receive an exemption from taxation but not from assessment.

The ordinary meaning of "assessment," therefore, would preclude a holding that appellants' property was "assessed" but exempted from taxation during the years 1967, 1968 and 1969. As "assessment" is an integral part of the taxation process, leading to the imposition of taxes, exempt property is simply not "assessed." Absent some indication that the Legislature is using a term in an abnormal sense, a " 'statute should be construed according to the ordinary and natural

import of the language used . . . .' " *Baltimore County v. White*, 235 Md. 212, 218, 201 A. 2d 358, 360 (1964). And there is no indication that the Legislature was using the term "assessment" in the "Escaped Property" statute (Art. 81, § 34) in any unusual sense.[5]

The same principle, that words in a statute are construed in accordance with their ordinary and natural meaning, is also fatal to appellants' other argument focusing upon the word "escape" in § 34. In appellants' view, their property did not escape assessment and taxation because, they say, the word "escape" does not encompass the deliberate act of the Supervisor granting an exemption because of a mistake of law. Appellants give an overly narrow meaning to the word. Property which was not assessed and taxed, even if by an intentional although mistaken act of the tax assessor, has "escaped" assessment and taxation.[6]

Not only does the statutory language militate against appellants' position, but the cases fail to support their theory that only property which was unknown to the tax assessor or not on his records may be retroactively taxed under escaped property statutes. For example, in *Mid Towne v. State Tax Dept.*, 228 Md. 66, 178 A. 2d 422 (1962), the taxpayer's tangible personal property had been assessed for the year 1957 and the tax was paid for that year. However, it was not assessed in 1958 and 1959 because of the taxpayer's initial failure to file annual reports during those years and the tax officials' subsequent failure to make the estimated

**5.** Compare Code (1957, 1969 Repl. Vol., 1973 Cum. Supp.), Art. 81, § 232B, relating to the valuation of exempt property, where the context indicates that the Legislature was using the word "assessment" in two different senses in the same section.

**6.** While the term used most often in statutes and cases is "omitted property" rather than "escaped property," it is significant that the cases seem to have used the two terms interchangeably. See, e.g., Adams v. Luce, 87 Miss. 220, 224, 39 So. 418, 419 (1905); Independent Pipe Line Co. v. State Bd. of Equalization, 168 Okl. 432, 433, 33 P. 2d 797, 799 (1934); State v. Thompson-Parker Lumber Co., 173 Okl. 22, 24, 46 P. 2d 494, 496 (1935); McCanna v. Board of Assessors, 48 R. I. 396, 398, 137 A. 694, 695 (1927); Home State Bank of Blaine v. Whatcom County, 169 Wash. 486, 491, 14 P. 2d 21, 23 (1932). And see Hopkins v. Van Wyck, 80 Md. 7, 30 A. 556 (1894), where this Court, in connection with an earlier statutory scheme relating to "omitted" or "escaped" property, used the two terms interchangeably throughout the opinion. See also Skinner Dry Dock Co. v. Baltimore City, 96 Md. 32, 53 A. 416 (1902).

assessments provided for in situations where the taxpayer had failed to report. Nevertheless, the tax officials obviously knew of the property and had records concerning it, as they corresponded with the taxpayer about the property during 1958 and 1959. In 1960, the authorities assessed the property for 1958 and 1959 as escaped property within the meaning of § 34. This Court sustained the tax officials' action, holding that Maryland's "Escaped Property" statute was applicable under the circumstances. *See also Skinner Dry Dock Co. v. Baltimore City,* 96 Md. 32, 53 A. 416 (1902), involving a local omitted property statute which was held applicable even on the assumption that the tax authorities knew of the property. (96 Md. at 40.)

The particular issue here, *i.e.,* whether the Maryland "Escaped Property" statute embraces property which was erroneously granted a tax exemption for prior years, has not been decided by this Court. However, the question has arisen under the similar statutory provisions of a few other states, and the courts have held that property mistakenly given a tax exemption is escaped or omitted property subject to taxation for the period of exemption. *Tally v. Brown,* 146 Iowa 360, 125 N. W. 248 (1910); *Inhabitants of Athens v. Whittier,* 122 Me. 86, 118 A. 897 (1922); *McCanna v. Board of Assessors,* 48 R. I. 396, 137 A. 694 (1927); *Armory Realty Co. v. Olsen,* 210 Wis. 281, 293-94, 246 N. W. 513, 518 (1933). As explained by the Supreme Court of Iowa in *Tally v. Brown, supra,* 125 N. W. at 253:

> "Is taxable property any the less omitted from the assessment roll when the assessor . . . renders his opinion that it is not taxable, than when it is left off the assessment roll through oversight or ignorance of its existence? . . . The cause of omission is not suggested in this statute, so that, if for any reason taxable property has been 'left out' of the assessment roll by the assessor, it is subject to assessment . . . ."

*See also Sears v. Nahant,* 215 Mass. 329, 334, 102 N.E. 494, 496 (1913), where the court stated:

"But we are of the opinion that section 85 as to omitted assessments does not require that the property be newly discovered in the sense of coming for the first time to the knowledge of the assessors, in order that it may be legally assessed. If the assessors, through want of knowledge of facts or ignorance of the law or as to their duty, or for any other honest reason have failed to include property in the annual assessment, it is omitted property within the meaning of that section, and in the exercise of good faith, they may include it in a supplemental assessment."

The principal case relied on by appellants is *Baltimore C. & A. Ry. Co. v. Wicomico County*, 93 Md. 113, 48 A. 853 (1901), where this Court held that the county commissioners could not "levy" taxes on a railroad's property for·previous years during which the railroad was erroneously given the tax exemption of its predecessor. However, *Baltimore C. & A. Ry. Co. v. Wicomico County* was decided twenty-eight years before the enactment of the present "Escaped Property" statute, Art. 81, § 34. At the time it was decided, there was no statutory provision authorizing the taxation for prior years of "escaped" property. Thus, the case cannot be relied upon in construing § 34 except to the extent it might be inferred that the Legislature, in enacting § 34, desired to overturn the result of the *Wicomico County* case.[7]

The appellants also contend that several cases from other states support their position, citing *Anniston City Land Co. v. State*, 185 Ala. 482, 64 So. 110 (1913); *People v. Dunham*, 311 Ill. 439, 143 N. E. 52 (1924); *German Savings Bank v. Trowbridge*, 124 Iowa 514, 100 N. W. 333 (1904); *Thomas' etc. v. Comm.*, 308 Ky. 695, 215 S.W.2d 546 (1948); *Gully v.*

---

7. It should also be noted that Baltimore, C. & A. Ry. Co. v. Wicomico County involved an attempted retroactive "levy" by the county government. Section 34 does not authorize a retroactive levy, but an assessment and taxation for past years when the property was not-assessed and taxed. Under § 34 the levy by the county commissioners for the past year is deemed to include the escaped property for that year. See Mid Towne v. State Tax Dept., supra, 228 Md. at 70-71.

*Mississippi Valley Co.,* 181 Miss. 669, 180 So. 745 (1938); *Adams v. Luce,* 87 Miss. 220, 39 So. 418 (1905); *Marshall Wells Co. v. Foster County,* 59 N. D. 599, 231 N. W. 542 (1930); *Palmer v. Beadle County,* 70 S. D. 99, 15 N.W.2d 6 (1944). In all of these cases, the property involved was in fact assessed and some tax money was paid for the past years in question. Under these circumstances, the courts held that escaped property statutes were not applicable and that the tax authorities could not collect more taxes on the theory that the prior assessment was defective or void (*Adams v. Luce, supra*); or because the wrong governmental entity had originally made the assessment and collected the tax (*Gully v. Mississippi, supra; People v. Dunham, supra; Thomas' etc. v. Comm., supra*); or because a portion of the property had not been included in the assessment (*Anniston City Land Co. v. State, supra*); or because the assessor had previously undervalued the property (*German Savings Bank v. Trowbridge, supra; Marshall Wells Co. v. Foster County, supra; Palmer v. Beadle County, supra*).

The above-cited cases disclose the line which has been drawn by most courts throughout the country. Where an assessment has actually been made and taxes paid on property, such property has not "escaped" assessment and taxation. It simply is not escaped or omitted property under the language of typical "escaped property" statutes. The language of these statutes reveals that they were not intended to authorize a retroactive *increase* in the assessment and taxation for prior years because of an asserted mistake in valuation, or some other alleged mistake. On the other hand, where property has not been assessed and taxed at all for the years in question, the courts have regularly held that escaped property statutes apply, regardless of whether the property was known or not.

Lastly, no possible reason or policy has been suggested which might justify the distinction urged by appellants. There is no rational basis for distinguishing between property mistakenly granted a tax exemption and property which the assessor overlooked. In either situation, the property owners should have contributed their share to

support governmental services but did not, thereby increasing the burden on other property owners. A construction of a statute which produces an unreasonable or illogical result should be avoided wherever it is possible to do so consistent with the statutory language. *Coerper v. Comptroller*, 265 Md. 3, 6, 288 A. 2d 187, 188 (1972); *Pan Am. Sulphur Co. v. State Dept. of Assessments and Taxation*, 251 Md. 620, 627, 248 A. 2d 354, 358 (1968); *Sanza v. Maryland Board of Censors*, 245 Md. 319, 340, 226 A. 2d 317, 328 (1967). To adopt appellants' view of the statute would lead to an unreasonable result.

The statutory language, the cases, and logic, all lead to the conclusion that the Supervisor and the courts below correctly applied the "Escaped Property" statute to appellants' property.

*Order affirmed.*
*Appellants to pay costs.*

*Barnes, J., dissenting:*

I dissent because, in my opinion, the majority has (1) misconstrued the language of Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 34 in regard to "Escaped property," (2) misunderstood several of the important facts, (3) misconstrued the legislative history of § 34, and (4) not properly evaluated several of the prior decisions of this Court and of our sister states.

As a majority properly observes, the first method used by the courts to ascertain the legislative intent in a statute is to give the words used in the statute their plain, ordinary and usual meaning; and if those words disclose the legislative intent, there is no need for the courts to use rules of construction which would apply if the language is ambiguous. *Scoville Service, Inc. v. Comptroller*, 269 Md. 390, 306 A. 2d 534 (1973) and cases cited in that opinion.

1.

As I read the words of § 34, they are clear, plain and

unambiguous, and clearly indicate the intention of the General Assembly. First, taking the words "any property which by law is subject to assessment *and* taxation" (emphasis supplied), I find nothing ambiguous or difficult about them.

It will be observed that the word "and" is used as a conjunction between the words "assessment" and "taxation," rather than the word "or." This indicates to me that the words "any property" mean property that is subject to *both* "assessment" *and* "taxation" and not property which may be subject only to one or the other.

Then come the critical words "has escaped." There is no mystery about the meaning of the word "escape." In Webster's New Twentieth Century Dictionary (Unabridged, Second Edition), the word "escape" is defined as follows:

"escape, v.i. escaped (-kapt), pt., pp.; escaping, ppr. (ME. escapen; OFr. escaper, to escape; LL. ex capa, out of cape; L. ex. out of, and L.L. capa, cape, cloak)

1. to get free; get away; break loose, as from a prison.
2. to avoid an illness, accident, pain, etc.; as, two were killed, but he *escaped.*
3. to flow, drain, or leak away; as, water *escapes* rapidly from the drainpipe.
4. to slip away; disappear; as, the image *escaped* from her memory.

"escape, v.t.

1. to get away from; flee.
2. to avoid; manage to keep away from; as, he *escaped* punishment.
3. to come from involuntarily or unintentionally; as, a scream *escaped* his lips.
4. to slip away from; be missed, unperceived, or forgotten by; as, the exact date *escapes* me.

"Syn. — elude, evade, avoid, shun, decamp, flee, depart, abscond, break away."

The General Assembly did not use the word "omitted" from assessment and taxation as the Wisconsin statute does.

See *Armory Realty Co. v. Olsen*, 210 Wis. 281, 246 N. W. 513 (1933).

The majority indicates that the cases use the words "omitted property" and "escaped property" interchangeably. I do not so read the cases on which it relies.

"Omit" is defined in Webster's New Twentieth Century Dictionary (Unabridged, Second Edition) as:

"1. To leave out or unmentioned; not to insert, include or name.
2. To forbear or fail to perform or make use of; to leave undone; to neglect."

It is apparent to me that property "omitted" from assessment and taxation is that which has been "left out" or "unmentioned," or which by neglect of the assessor or his failure to perform his duties properly, has not been assessed or taxed. "Escaped" property, however, by its definition has a much more narrow meaning. It will be observed that the two words "omit" and "escape" are not listed as synonyms for each other.

The words "has escaped" mean that the property has "escaped" the notice or attention of the assessing authorities. This may result from many causes; but property known to the assessing authorities, appearing on the books and records of the assessing authorities, and, indeed, actually assessed by those authorities, cannot, in my opinion, come within the ambit of the words "has escaped." To attempt this is to distort — even to torture — the plain and ordinary meaning of the words. This we should not do.

The words "all property which was not assessed, but which ought to have been assessed," appearing in the last sentence of § 34, refer to escaped property and provide that such property shall be "deemed" to have been "covered and embraced" in "*the levy*" for the prior years — not exceeding four — applicable to such escaped property.

The concept of "escaped property" as set forth in § 34 was broadened in regard to personal property by the Act of 1967, Ch. 404, § 1 — now § 34A of Art. 81 — which provides:

·"(a) *Deemed to be escaped property.* — Where

the taxpayer is required *to report personal property in such detail as to show the cost or market value thereof, but the taxpayer fails to report accurately* the cost or other data required to establish market value, and the property is assessed at a lower valuation than it would have been had it been reported accurately, that portion of the property as to which the cost or market value is unreported shall be *deemed to be escaped property.*

"(b) *Assessment; penalty.* — The escaped property shall be assessed; and if it is determined that the taxpayer failed to make a full disclosure of the actual cost or market value or other data and the failure to report accurately was the cause of the assessment of said property at a lower valuation than it would have been had it been reported accurately, there shall be added thereto, by the assessing authority, a penalty in an amount equal to 20% of the value of the escaped property.

"(c) *Notice of assessment and penalty.* — Notice of the assessment and of the penalty shall be made in accordance with the provisions of § 29 of this article. Such notice shall indicate separately the assessment on the escaped property and the penalty thereon." (Emphasis supplied.)

The significance of this amendment is that the General Assembly thought it necessary to apply by additional legislation the concept of "escaped property" to a situation in which the assessing authorities *had notice* of the personal property in question by the report, but where the *taxpayer failed to report accurately* the cost of the property. Due to this failure to report accurately, a lower assessment would result. The portion of property which was unreported would "*be deemed to be escaped property*" under the statute. Even though the cost figures were inaccurately given, it is apparent that, but for this additional legislation in 1967, such property would not have been escaped property under § 34 because the assessing authorities would have had notice of the personal property appearing upon the report. This, in

my opinion, is a clear legislative recognition that the concept of "escaped property" in § 34 is the one which I believe to be correct.

2.

Turning to the facts in the present case, the majority indicates that the subject property was not "assessed" by the collector of taxes for Montgomery County for the years 1967, 1968, and 1969. The evidence in the case, however, indicated quite the opposite conclusion to me, *i.e.*, that the subject property was indeed assessed and was most likely on the "tax rolls" for the years mentioned. The appellee, Supervisor of Assessments of Montgomery County, did not introduce the tax rolls for the years in question into evidence, nor was there any testimony by anyone that he had made a careful examination of those rolls and that the subject property did not appear on the rolls. The documents that were introduced into evidence indicate to me that the subject property was assessed and was most likely on the tax rolls.

The master card of the assessor for the property 5400 Grosvenor Lane, Bethesda, Maryland, was introduced into evidence. After giving the liber and folio references, the original assessment for the property is: Land 165400, Imp. 62300, Total 227700, Zoning R-90. Under the heading "RECOMMENDED ASSESSMENT" the following appears under the subheadings "1964," "1968," and "1971":

|  | 1964 | 1968 | 1971 |
|---|---|---|---|
| Land | 132,210 (67) | 233,800 | 317,250 |
| Improvements | 64,500 | 65,800 | 67,400 |
| Total | 196,710 (67) | 299,600 | 384,650 |
| Date of Notice | Oct. 25 '63 |  | Sep. 25 '70 |
| Expiration Date | Nov. 14 '63 |  | Oct. 15 '70 |
| Protested |  | 70-1799 PROTEST |  |
| Date of Hearing |  | Aug. 24 '70 |  |
| Final Notice |  | Aug. 26 '70 |  |

The master card has the word "EXEMPT" stamped on it in large letters, but it is stricken out in ink with a notation in ink reading "eff. 1967 levy per Mr. Duvall's letter dated 6-22-67."

There is no question that the subject property was on the tax rolls for the years prior to 1967 and that the owner of that property *paid* taxes upon it during those prior years. Inasmuch as the assessor's master card contains the assessment first mentioned throughout the period in question with only recommended assessments appearing on the card, it is presumed that the assessment continued throughout the period in question and was on the tax rolls during that period. *See Gibraltar Construction and Engineering, Inc. v. State National Bank*, 265 Md. 530, 535, 290 A. 2d 789, 792 (1972) and cases therein cited.

The majority seems to indicate that if there is no resulting taxation of a property, it cannot be legally assessed by the taxing authorities inasmuch as the "assessment" is "an integral part of the taxation process, leading to the imposition of taxes [so that] exempt property is simply not 'assessed.'" This is a curious position to take in view of the practice to the contrary in Baltimore City — at least for the last 40 years — in uniformly assessing property exempt from taxation and placing it on the assessment books followed by the letter "X" indicating that it was property exempted from taxation.

All property is potentially available for purposes of taxation depending, of course, on the legislative policy in regard to exemption from taxation. It is a sound public policy to assess property exempt from taxation in the event an exemption terminates so that a special assessment for such property is not required and, more importantly, the property assessed, but exempt from taxation, becomes part of the "assessable basis" for the jurisdiction involved, thereby substantially increasing the borrowing power of that jurisdiction.

In any event, the subject property was *in fact* assessed by the assessing authorities for the years 1967, 1968, and 1969 and could not, in my opinion, be "escaped" property.

How then can the subject property be thought to be "escaped property" under these circumstances when it admittedly was properly *assessed and taxed* during the taxable years prior to 1967 and when the records, themselves, of the Montgomery County assessors indicate, *prima facie*, that the subject property carried an assessment during the years 1967, 1968 and 1969?

It is interesting to observe that in the letter of June 3, 1970, Mr. Duvall, the Supervisor of Assessments for Montgomery County, wrote the Grosvenors, as follows:

"Upon advice of Mr. William H. Riley, Chief Supervisor of Assessments and the opinion of Mr. Joseph R. Raymond, Assistant Attorney General, it is necessary for this office to place the assessment of your property on the assessment dockets in your name for tax collection, which in effect rescinds the exempt status of this property.

"Mr. Riley's letter dated May 20, 1970, attached, is herewith enclosed for your information.

"There is also enclosed, notice of assessment indicating the assessment which is to be effective *for the 1970 levy.*" [1] (Emphasis supplied.)

It thus appears that the Supervisor of Assessments thought that the removal of the educational exemption from the subject property *only* subjected it to taxation *prospectively* for the taxable year 1970.

In sum, the facts indicate to me that the office of the assessors had full knowledge of the location, ownership and characteristics of the subject property and assessed that property, which was certainly on the tax rolls of the collector for years prior to 1967 and was, *prima facie*, on such rolls during the taxable years 1967, 1968, and

---

1. The letter of May 20, 1970, notified Mr. Duvall that Regulation No. 1 was invalid as being in conflict with the provisions of the Act of 1961, Ch. 884 — codified as Art. 81, § 8 (6); that the opinion of the Assistant Attorney General to that effect was enclosed; and that the exemption allowed should be rescinded.

1969. Under these circumstances, it is extraordinary indeed, in my opinion, to think that the property was "escaped property."

3.

The legislative history of § 34 is instructive and, in my opinion, supports my understanding of the legislative intent in regard to that section.

Section 34 first came into the Maryland law by the Act of 1929, Ch. 226, § 31 and the language of that section has remained the same since June 1, 1929.

Prior to the effective date of the Act of 1929, Ch. 226, the Maryland law in regard to revenue and taxes had, *inter alia,* provided that every assessor:

> " . . . shall annually inform himself by all lawful means of *all property* . . . in his county, district or city *liable to taxation* and which may have been *omitted in the assessment,* and all buildings and improvements, and all property created or acquired since said assessment, and shall value the same at the full cash value thereof and shall make return thereof to the county commissioners or appeal tax court, if in the city of Baltimore, for the purposes of this section. . . ." (Emphasis supplied.)

*See* Laws of Maryland, 1841, Ch. 23, § 23; Ch. 116, Sec. 6; 1847, Ch. 266, § 16; 1874, Ch. 483, § 5 and Annotated Code of Maryland, 1924, Art. 81, § 13.

The language of this statute "omitted in the assessment" is quite similar to that of the Wisconsin statute involved in *Armory Realty Co. v. Olsen,* 210 Wis. 281, 246 N. W. 513 (1933), in which the Supreme Court of Wisconsin held that property marked "exempt" in 1926, 1927 and 1928 and found not to have been exempt by the assessor in 1929 was "omitted" property.

But, as already noted, the Maryland law was *changed* by the Act of 1929, Ch. 226, § 31, by eliminating the words "omitted in the assessment" to "escaped" which, to my mind, indicates a legislative intent to change the concept,

particularly as the new provision subjected such escaped property retrospectively to the levy for the years, not exceeding four, in which the escaped property should have been, but was not, assessed. This thereby changed the existing law as enunciated by this Court in *The Baltimore, Chesapeake and Atlantic Ry. Co. v. Wicomico County,* 93 Md. 113, 48 A. 853 (1901).

Section 34 was Section 31 of the proposed revision of Art. 81 by the Maryland Tax Revision Commission of 1927 of which Arthur W. Machen, Jr. was Chairman. The section did not appear in the Preliminary Report of that Commission, dated June 19, 1928, but did appear in its Final Report dated December 19, 1928.

It seems clear that when the Commission in the Final Draft departed from the use of the words "omitted in the assessment" in the existing law, the change was deliberate and was intended to narrow the scope of the addition of property for assessment and taxation for *prior years,* not exceeding four years. This new concept — changing the prior law as announced by our predecessors in regard to the application of *prior levies* to "escaped property" — was deliberately made narrow, probably to escape difficulty in the passage of the proposed new law by the General Assembly.

The majority states that "[N]o possible reason or policy has been suggested which might justify the distinction urged by appellants. There is no rational basis for distinguishing between property mistakenly granted a tax exemption and property which the assessor overlooked." and concludes that the construction which I think is the proper one "produces an unreasonable or illogical result," which under a well-established principle of statutory construction, is to be avoided, if possible. I disagree with this position completely.

It is apparent to me that "escaped property" would principally apply to personal property, rather than to real property, since real property has a fixed situs and is difficult to be "escaped property" — although it is, of course, possible that there could be such. In sum, the Revision Commission did not intend to have the retrospective provisions of

proposed Section 31 apply to *all* property "omitted" from assessment and taxation, but only to "escaped property." There is, in my judgment, a sound public policy behind this concept. If the property in question is known to the assessors and has been assessed by them in the past but has not been taxed in a particular tax year because of some error, default or oversight by the assessing authorities, it is hardly fair to the owner, who has assumed that the assessors acted properly and in accordance with the applicable law, to find himself subjected to taxation for prior years, up to four. The owner, who has been guilty of no fault in the matter and who has arranged his financial affairs in accordance with the then *status quo*, should not be subjected to four years of back taxes resulting from some oversight or error of the assessing authorities. I am aware that the State cannot be legally estopped by the error of its officials and employees, but the General Assembly may well take the essential unfairness of such retrospective imposition of taxes into account in adopting tax legislation for the State. The instant case is a classic example, in my opinion, of how unfairly and oppressively the construction approved by the majority operates. As I see it, it begs the question to first observe that everyone is to pay his fair share of taxes and, from that, to jump to the conclusion that the taxpayer who in prior years did not pay what the taxing authorities *later* determine he should have paid should have to pay his share although there was no fault or deception on his part. His "fair share" of taxes is that assessed and taxed to him in the taxable years in question unless "escaped property" under § 34, as properly construed, is involved. Indeed, the windfall is not to the taxpayer who was incorrectly taxed, but is to the taxing authorities who, in addition to the tax retrospectively levied, obtain the substantial interest imposed in addition to the tax itself even though all of this results from their error. In the present case, the amount of retrospective taxes is $28,661.49, not including interest.

4.

The majority indicates that *Mid Towne Plymouth, Inc. v.*

*State Dept. of Assessments & Taxation,* 228 Md. 66, 178 A. 2d 422 (1962), fails to support the theory of the appellants that "only property which was unknown to the tax assessor or not on his records may be retroactively taxed under the escaped property statutes." My reading of the opinion in that case indicates the contrary. In *Mid Towne,* the corporate appellant taxpayer, which conducted an automobile sales and service business, had filed a *tangible personal property report* with the State Tax Commission for the year 1957, but *did not file* the required annual report for the years 1958 and 1959. After the corporation was placed on the list of delinquent corporations for forfeiture of its corporate charter for failure to file the reports, it filed annual reports for 1958 and 1959 and was removed from the forfeiture list. During 1959, no assessment was made against the taxpayer's personal property for 1959. On April 12, 1960, the State Department of Assessments and Taxation (which succeeded the State Tax Commission) did not accept the information furnished in the corporation's reports, but made tentative assessments in excess of the amounts reported. The corporation filed amended reports and the Department entered final assessments for 1958 and 1959 against the tangible personal property as escaped property. In affirming the assessments for 1958 and 1959, the Court rejected the contention of the taxpayer that the assessment upon escaped property could not be made after the expiration of the tax year in question.

As the opinion in *Mid Towne* observes, the tangible personal property in a commercial corporation changes from year to year and the knowledge obtained by the assessing authorities for a prior year is no indication of what the tangible personal property will be in a subsequent year. Unless the corporate taxpayer makes the required report of its tangible personal property for the taxable year in question, the assessing authorities have no knowledge of what property is involved and hence such unreported property is "escaped property" under Art. 81, § 34. I see nothing inconsistent between the decision in *Mid Towne* and the position urged by the appellants in the present case.

*Skinner Dry Dock Co. v. Baltimore City*, 96 Md. 32, 53 A. 416 (1902), involved the prior Maryland statute in regard to "omitted property." The distinction between that statute and the present "escaped property" statute has already been pointed out.

The cases from sister states cited by the majority to support its construction of the statute do not, in my opinion, lend such support. Many of the cases cited involve statutes similar to the Maryland statute prior to the effective date of the Act of 1929, Ch. 226, providing for "*escaped* property," *i.e.*, property liable to taxation which "may have been omitted in the assessment." These cited cases are: *Talley v. Brown*, 146 Iowa 360, 125 N. W. 248 (1910); *Inhabitants of Athens v. Whittier*, 122 Me. 86, 118 A. 897 (1922); *McCanna v. Board of Assessors*, 48 R. I. 396, 137 A. 694 (1927); *Armory Realty Co. v. Olsen*, 210 Wis. 281, 246 N. W. 513 (1933), *supra;* and *Sears v. Nahant*, 215 Mass. 329, 102 N. E. 494 (1913).

As already stated, it is clear to me that there is a definite distinction between property "*omitted*" from assessment and "*escaped*" property so that the cases mentioned are not in point with regard to the Maryland statute concerning "escaped property."

Nor am I of the opinion that the attempted distinction by the majority of the cases supporting what I consider to be the proper construction of the Maryland "escaped property" statute is a valid one. These cases are: *Anniston City Land Co. v. State*, 185 Ala. 482, 64 So. 110 (1913); *People v. Dunham*, 311 Ill. 439, 143 N. E. 52 (1924); *German Savings Bank v. Trowbridge*, 124 Iowa 514, 100 N. W. 333 (1904); *Thomas' etc. v. Comm*, 308 Ky. 695, 215 S.W.2d 546 (1948); *Gully v. Mississippi Valley Co.*, 181 Miss. 669, 180 So. 745 (1938); *Adams v. Luce*, 87 Miss. 220, 39 So. 418 (1905); *Marshall Wells Co. v. Foster County*, 59 N. D. 599, 231 N. W. 542 (1930); and *Palmer v. Beadle County*, 70 S. D. 99, 15 N.W.2d 6 (1944).

The attempted distinction is that in these cases "the property involved was in fact assessed and some tax money was paid for the past years in question." The opinions in these cases, however, indicate that the holding that the

254

property was not "escaped property" or, in several cases, "omitted property," was based upon the fact that the property was known to the assessors as being the property of the taxpayer and hence could not be said to be "escaped" or "omitted" property. As the Supreme Court of Mississippi aptly stated in *Adams v. Luce*, 87 Miss. 220, 224-25, 39 So. 418, 419 (1905), *supra* — a case in which the statute provided for assessment and taxation of "escaped property" :

> "The object of the law, in respect to the back-assessment of property by tne revenue agent, was to prevent property which had not been actually assessed at all from escaping its proper portion of the public burden of taxation. Property may escape taxation in varied ways, as, for example, (a) by being willfully withheld from assessment by the owner; (b) by being inadvertently or accidentally omitted by the owner in returning his property to the assessor. In either of these two cases, and in others which may be conceived, there has been in fact — there has been actually — escape of such property from taxation. It has never been assessed at all as a matter of fact, and it was the purpose of the law, in cases like these, where the regularly constituted fiscal officers had failed to assess all property liable to taxation, to authorize the revenue agent to back-assess such property never heretofore in fact assessed at all, and which was, therefore, described as property which had in fact escaped taxation. But, where an assessment has in fact been made, where the assessment roll shows on its face all that it ought to show — the name of the owner, the description of the property, the valuation of the property, the tax, etc. — but that assessment is irregular or imperfect or defective, or even absolutely and utterly void, by reason simply of a failure to comply with some vital and fundamental requirement of the law, such property cannot, within the meaning of these words, 'escaped

taxation,' be said to be property which has escaped taxation in fact. * * *

"* * * The very term 'escape,' ex proprio vigore, implies that it had never been found or known or listed for taxation. That escapes detection which never has been seen in fact. That escapes assessment which never has in fact been assessed in any way. That which, as a matter of fact, has been returned by the owner, placed upon the assessment roll by the assessor, dealt with by the board of supervisors and by the tax collector, cannot be said in any proper sense of the words 'escaped taxation,' or, within the scope of the evil to be remedied by the revenue law, to have escaped taxation."

In a later Mississippi case, *Gully v. Mississippi Valley Co., supra,* the Supreme Court of Mississippi extended the holding in the *Adams* case to a case involving lots shown on the assessment rolls of the County as the property of the taxpayer but upon which no value had been placed upon them by the county assessors—they having assumed that the valuations were to be made by the Mississippi State Tax Commission. In fact, the State Tax Commission did make the valuations and the owner paid the resulting taxes. Still later, the County decided to evaluate the lots and attempted to assess the lots as "escaped property." The Supreme Court held that the County could not assess the lots as escaped property because they had not been withheld from the assessment rolls.

Indeed, in several of the cases cited, the Courts held that if the property appeared on the assessment rolls, it could not be considered as "omitted property" because it was not "omitted." *See People v. Dunham; Marshall Wells Co. v. Foster County; Thomas' etc. v. Comm.;* and *Palmer v. Beadle County,* all *supra.*

In short, as I read them, the decisions of the highest Courts of our sister states *sustain* the construction of the Maryland statute in regard to "escaped property" I believe to be the correct construction.

For all of these reasons, I would reverse.