EDWARD KASSAB ET AL. *v.* WILLIAM
BURKHARDT ET AL.

[No. 526, September Term, 1976.]

*Decided February 7, 1977.*

The cause was argued before MOYLAN, MENCHINE and
MOORE, JJ.

*Edward Kassab*, with whom were *Edward D. E. Rollins,
Jr.*, and *Rollins & Calvert* on the brief, for appellants.

*Robert J. Carson*, with whom were *Thomas G. Peter,
Joseph J. Mahoney* and *Smith, Somerville & Case* on the
brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

Edward Kassab and others [1] as co-partners (applicants) petitioned the Board of Appeals of Cecil County, Maryland for a special exception as to 174.324 acres of land in Cecil County for use as a Planned Unit Development (P.U.D.). The land in question was zoned Shoreline Recreational Zone R.R.[2] The Board granted the special exception with restrictions.

William Burkhardt and other protestants [3] (protestants), entered an appeal to the Circuit Court for Cecil County from the grant of the special exception. Applicants entered an appeal to that court from the restrictions placed upon the granted special exception.

The appeals were consolidated and heard together in the Circuit Court. The grant of the special exception was affirmed. The restrictions imposed upon the grant of the special exception were sustained in part and amended in part.

Protestants have appealed from the order of the Circuit Court granting the special exception.

Applicants have appealed from the order of the Circuit Court imposing restrictions upon the granted special exception.

Because we find that the applicants failed to meet a condition precedent to the grant of a P.U.D. special exception, we shall reverse the order of the Circuit Court in its entirety.

---

1. Eugene F. Jarrell and Gerald W. Gaster.
2. This zone is defined in the zoning ordinance as follows:

   *"Shoreline Recreational-Residential Zone R-R*

   This zone contains recreational uses peculiarly suited to shorelines, as well as residential uses. The zone is meant to provide primarily for uses of recreational character, including some commercial recreation and seasonal dwellings. Permanent dwellings are permitted as a secondary use."

3. Walden Pell and The Upper Chesapeake Watershed Association, Inc.

What we conceive to be the pertinent parts of the Cecil County Zoning Ordinance provide as follows:

"Section 5. Zone Regulations

\* \* \*

12. *Planned Unit Development*

It is the intent of these regulations to control the placement, design, use and density of well-planned, large scale, residential developments which will offer a variety of building types and a more efficient overall use of land and, within these limits, permit the optimum amount of freedom and variety in the design and management of such varying types of residential structures, including one and two family units, town houses and garden apartments within the areas designated.

\* \* \*

B. *Planned Unit Development — Where Permitted:*

Planned Unit Developments are special exceptions in the R-1, R-2, R-3, R-R, F-1, F-4, and A-R zones and are subject to approval by the Board of Appeals under the procedures specified below. In general, Planned Unit Development is contemplated in residential zones where tracts suitable for location, size, and character for the uses and structures proposed are to be planned and developed as units according to the requirements and procedures of this Ordinance. Planned Unit Development shall be approximately located with respect to the general pattern of urban development existing or proposed, and to public and private facilities and services, existing.

\* \* \*

G. *Sanitary Facilities:*

Prior to accepting for approval a development plan for a Planned Unit Development, the Board of Zoning Appeals must be furnished satisfactory evidence that acceptable community water and sewerage systems will be provided and approved by the Health Department as well as by any other agency having jurisdiction over such matters. *No PUD Development Plan will be approved unless the proposed development will be served by public or private water and sewerage disposal systems which shall be existing at the time the plan is first submitted for approval.*" (Emphasis added.)

The position of the applicants with respect to the meaning and effect of § 5-12-G plainly appears from the testimony of the applicant Jarrell and from a stipulation made by the applicant Edward Kassab during the course of the hearing before the Board:

"Q  Has the existence of adequate sanitary and water facilities been assured for the development by the existence of these facilities and the proper criteria of constructing them on the Comprehensive Water and Sewer Plan of Cecil County?

A  The water and sewer plan do exist on the Comprehensive Plan of Cecil County, yes."

"MR. KASSAB: May it please the Board? The Petitioners will stipulate that there are no plans, either sanitary or otherwise, in existence and that, therefore, the literal provisions of that section just read to this Board do not exist; have not been complied with. Petitioners address themselves specifically to that issue in his Memorandum of

Law citing the decisions of the highest courts of this State. We respect the ambiguity which appears on the face of the ordinance. It is a matter of law and no longer a matter of fact, because we agree that they do not exist."

The protestants, on the other hand, maintain that § 5-12-G, couched in plain and unambiguous language, must be literally construed.

The Board found that § 5-12-G was not required to be interpreted literally, saying in the course of its order granting the special exception:

"The Board notes in this respect the contention of the Protestants that Applicant's have not complied with the provisions of sub-paragraph G of Section 5, paragraph 12, to the effect that no Planned Unit Development will be approved unless the proposed development will be served by public or private water and sewerage systems which shall be existing at the time that the plan is first submitted for approval. The Board notes in this regard that Chesapeake Coves has been included in the Cecil County Master Sewer and Water Plan and that permits providing for disposition of sewerage have been issued by the State of Maryland. The Board finds that this is adequate compliance with the requirements of the Section above noted; since, as pointed out in the memorandum of law submitted by the Applicant, the Board cannot seriously believe that it was intended that the Applicant for a Planned Unit Development would be required to construct and place into existence a public or private water and sewerage disposal system without some indication of prior approval of the development."

The trial court took a similar position, saying in the course of its written opinion:

"Confronted with these two conflicting views the Board of Zoning Appeals took a position that this

water and sewer requirement had been made a part of the Cecil County Master Water and Sewer Plan; that a Maryland Sewage Disposal Permit had been issued by the Department of Water Resources, and, that these two requirements fulfilled the intent of the ordinance; that the Chesapeake Coves plan for water and sewer was part of the system which existed, i.e., the Cecil County Master Water and Sewer Plan.

"The Court concludes that the two views, presented on the above proposition raise a fair debate. For this Reason the Court has no power to disturb the finding of the Board of Zoning Appeals on this point."

We do not agree with the trial court that the interpretation of an ordinance is an issue for consideration under "fairly debatable" standards. The issue is one of law, not one of fact.

We agree with the protestants that § 5-12-G is couched in simple, clear and unambiguous language. In such circumstances, we find the case of *Slate v. Zitomer*, 275 Md. 534, 539-40, 341 A. 2d 789, 792-93 (1975), to be controlling:

"It is true that the primary rule in the construction of statutes is 'to effectuate the real and actual intention of the legislature.' *Height v. State*, 225 Md. 251, 257, 170 A. 2d 212 (1961). However, in ascertaining the legislative intent, 'the words of the statute are [deemed to be] used in their ordinary and popular sense and if the face of the statute does not show some contradictory intention then we will look no further.' *Department v. Greyhound*, 247 Md. 662, 669, 234 A. 2d 255 (1967); *Pressman v. Barnes*, 209 Md. 544, 558, 121 A. 2d 816 (1956). This Court has often stated that 'a statute should be construed according to the ordinary and natural import of the language used, unless a different meaning is clearly indicated by its context, without resorting to subtle or forced interpretations for the purpose of extending or

limiting its operation.' *Balto. County v. White,* 235 Md. 212, 218, 201 A. 2d 358 (1964); *see also Grosvenor v. Supervisor of Assess.,* 271 Md. 232, 237-38, 315 A. 2d 758 (1974); *Radio Communications, Inc. v. Public Service Commission,* 271 Md. 82, 93, 314 A. 2d 118 (1974). And in *Md. Medical Service v. Carver,* 238 Md. 466, 478, 209 A. 2d 582 (1965), the Court said:

> 'If the legislative intent is expressed in clear and unambiguous language, this will be carried into effect by this Court even if this Court might be of the opinion that the policy of the legislation is unwise, or even harsh or unjust, if no constitutional guarantees are impaired by the legislation.'

*See also Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A. 2d 619 (1946).

"Moreover, courts may not 'attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature.' *Amalgamated Insurance v. Helms,* 239 Md. 529, 535-536, 212 A. 2d 311 (1965)."

Section 5-12-G clearly imposes a condition precedent to the grant of a PUD special exception. Its requirement that "No P.U.D. development plan will be approved unless the proposed development will be served by public or private water and sewerage disposal systems which shall be existing at the time the plan is first submitted for approval," clearly and plainly on its face says what it means. We must construe it as meaning what it says. The undisputed evidence in the record shows that a condition precedent to the grant of a special exception was not met by the applicants.

*Order reversed.*
*Costs to be paid by Edward Kassab,*
    *Eugene F. Jarrell and Gerald W.*
    *Gaster, co-partners.*